# Court of Appeals.

### April, 1888.

## PEOPLE v. DE LEON.*

KIDNAPPING—INVEIGLEMENT—CONSENT PROCURED BY FRAUD
—PENAL CODE—SECTION 211, SUBDIVISION 1; SECTION 213.

Defendant was tried and convicted, under an indictment containing two
counts, for kidnapping. The first count charged that defendant
did "feloniously and willfully inveigle and kidnap one Sarah Bowes,
with intent to cause her, the said Sarah Bowes, without authority
of the law, to be taken out of the State, and to be kept and detained
against her will." The second count was like the first, except that
it charged that the intent of the defendant was to send the said
Sarah Bowes against her will to Aspinwall in the State of Panama.
The evidence for the prosecution showed that defendant, under
the false pretense that employment had been procured for the prose-
cutrix, as a governess in the family of a certain named person at
Panama, induced the prosecutrix to take passage on a steamer for
Aspinwall, for the purpose of engaging in that service, when in
truth and in fact, the named person was the keeper of a house of
prostitution at Panama, for which . defendant acted as procurer,
and that his object and purpose in inducing prosecutrix to go to
Panama, were that she should become an inmate of such house.
There was no actual confinement or detention of prosecutrix, nor
any actual force used, nor apparently contemplated by defendant.
The prosecutrix, induced by the false pretences above set forth,
consented to go to Aspinwall, and voluntarily took passage to that
port.—*Held*, that there was such fraud and deception by which
the will of the prosecutrix was subjected to that of the defendant,
and made subject to his control, as satisfied the charge of
inveiglement in the indictment. *Also held*, that the consent of the
prosecutrix having been procured by fraud, was as if no consent had
been given, and the fraud being part of the original scheme, the
intent of the defendant was to cause the prosecutrix to be sent out
of the State against her will. *Further held*, that these two elements

---

* As explaining and distinguishing this decision, see the next case,
People *v.* Fitzpatrick.

of the crime being proved, they made out an offence within the
Penal Code, section 211, subdivision 1.

The provisions of section 213 of the Penal Code, that the consent of
the person kidnapped shall not be a defence, unless such consent
is not extorted by threats or duress, does not apply to cases where
the consent was procured by fraud, but only to a consent to the
very purpose of the defendant.

Appeal by defendant, John De Leon, from a judgment of
the General Term of the supreme court, in the first depart-
ment, entered upon an order made January 23, 1888, affirm-
ing a judgment of the court of general sessions of the city
and county of New York, entered upon a verdict convicting
defendant of the crime of kidnapping.

The facts fully appear in the opinion of the General
Term, which is here given, also in that of the court of
appeals.

*John D. Townsend*, for defendant, appellant.

*Randolph B. Martine*, district attorney ; *McKenzie Sem-
ple*, assistant, for the people, respondents.

The opinion delivered at General Term (BRADY, P. J.;
DANIELS and BARTLETT, JJ., present) was as follows :

PER CURIAM.—The defendant was indicted for willfully
and feloniously inveigling and kidnapping one Sarah Bowes,
with intent to cause her to be sent without authority of law
to the city of Aspinwall in the state of Panama in the
United States of Columbia, and to be there kept against her
will.   On the trial, it abundantly appeared that she was
induced by the appellant, aided and abetted by a woman
whom she met at his office, and who seems to have been
acting in concert with him, to go on board a steamer bound
to Aspinwall, Panama ; induced, enticed and wheedled
thereto by him in the manner stated.   He suggested the

passage, procured and paid for the tickets and gave Mrs. Bowes a letter addressed to Mrs. de. Blen who appears to have been his ally in the business in Panama, and who received and disposed of the women he sent to Aspinwall, and in which letter his business was revealed sufficiently to make it fully understood, particularly in connection with the evidence of Mr. Bonsall, that it was the transportation of women to Panama for the purposes of prostitution. His inducement by which Mrs. Bowes was inticed was the offer of a situation for her as nurse or ladies' companion in Panama, and upon which she testified she relied, and by which she was induced to go ; and further, that if it were not for such reliance she would not have gone.

The statute under which the appellant was convicted provides that a person who willfully inveigles or kidnaps another with intent to force him, without authority of law, to be secretly confined or imprisoned within the State, or to be sent out of the State, to be sold as a slave or in any way held to service, or kept or detained against his will, is guilty of kidnapping. The word "inveigle" is defined to be to persuade to something bad, to wheedle, to entice, to seduce, to beguile, and to inveigle involves no physical force, but such mental control over the person inveigled as to entice him to do what it is designated or to beguile him to do, and if this be accomplished by falsehood, by deceit, misrepresentation or device, whatever it may be, which captivates the mind, the crime is committed. The departure is then against the will, because of the fraud perpetrated upon its possessor, which acts on a belief induced by falsehood and for a wicked purpose, and without the falsehood the departure would not have taken place. The act of the appellant may be briefly stated as follows : With an intent to induce the complainant to leave this State, and for a wicked purpose, he made false representations which were believed to be true and relied upon and being relied upon, resulted in her departure. She was thus enticed, thus inveigled. Under the Revised Statutes (3 *R. S.* 7th ed. 2476, § 28) which was similar

to section 211 of the Penal Code, the Court of Appeals, in Hadden v. People (25 *N. Y.* 373) *held* that procuring the intoxication of a sailor with the design of getting him on shipboard without his consent, and taking him on board in that condition was kidnapping under section 28 (*supra*) and that it was immaterial whether the offender did the acts in person or caused them to be done. And the court also held that where the intent and expectation is that the seaman will be carried out of the State, the offense is complete, although the ship be not in fact destined to leave the State. On the trial there discussed, the defendant's counsel asked the instruction that the business of providing ships with sailors was lawful, and it was assumed that such was the intention, but that if the person kidnapped was to be sent to become a sailor he was to be made such against his will. So here, if Mrs. Bowes was to be sent to Panama for improper purposes it was against her will, and this was proved in fact by her return, and it is sufficiently shown for the reason that her ultimate destination, the machinations of the appellant, was discovered on the voyage. It is true in the case cited the the intoxication deprived the complainant of the power of exercising his will, but here the will was led captive by the appellant's fraudulent device and made subservient to his wishes.

This adjudication is quite sufficient in principle to sustain the conviction. The cases are analagous. While it must be said that Mrs. Bowes went on the journey for a purpose not truthfully set out by the appellant, she involuntarily went for the object intended by the appellant, and thus, so far as his intent, enticement, inducement or beguilement is concerned, against her will. We are now dealing with his acts, designs, intent, and whatever may be legitimately said to result from them, fairly tested by the incidents and emotions of life, must be his burden. What was his intent—what he did in furtherance of it, what was done by his victim willingly, and what against her will, are all proper subjects of inquiry ; and it is a universal problem, and if it were not it.

ought to be, that whatever one does by means of falsehood, deceit, misrepresentation or fraudulent device, is involuntary as in opposition to and therefore against her will. " Covin doth destroy all things."

Indeed, it must be further said that the statute was designed, as evidenced by the word " inveigle," to provide for cases kindred to this, where a person by improper device might be induced or enticed by another to leave the State to promote some unlawful scheme of the other.

If such cases are not within the letter, they are assuredly within the spirit of the statute, otherwise monstrous wrongs might be accomplished as in this case, with impunity; the infamous traffic of the appellant, based upon the moral death of innocent, virtuous women in pursuit of honest employment, can be carried on in defiance of law. Mrs. Bowes, for example, started away with a mind absolutely blank as to the object the appellant had in view on her departure, and under impression that she was about to secure by honest labor her own support and that of her children, with no surmise, no conjecture that she was to be led hopelessly into the realm of vice, far from friends, in an unhealthy climate, without means to pay the expenses of an immediate return, and therefore in a pitiful plight. It was this very condition upon which he relied for success in detaining his victim at the designated place, there either to yield from necessity or die. Indeed, he boasted of the safety of the business, for he said : " Dead women, like men, tell no tales."

The only possible answer to these views, springs from the provisions of section 213 of the Penal Code, which declares that upon a trial for a violation of this chapter, the consent thereto of the person kidnapped shall not be a defense unless it appear satisfactorily to the jury that such person was above the age of twelve years, and that the consent was not extorted by threats or duress.

But here there was no consent to do what the appellant attempted to accomplish. Mrs. Bowes consented to go to Panama on a promise of honest employment by respectable

employers, and not for any other purpose.  She did not consent to go for the object in view by the appellant.  She did not know it.  The consent must be intelligent, with full knowledge of the thing consented to.  The word "inveigle" must also be borne in mind involves consent, and the section mentioned cannot therefore apply to such a case.  If there be an alleged seizure or any force, the consent would be an answer unless obtained by threat or duress.  If it were alleged or proven that a person was approached and asked to leave this State and refused, and then put in jeopardy and to avert it consented, the person charged with the offence might take issue upon the alleged jeopardy and in addition prove the consent.  This would present the vital question to be determined.  If the section is to be applied to cases of inveiglement, and the consent involved as suggested is an answer, then that element is of no force whatever.  No conviction can be had under a charge resting upon it.  The legislative intent was to apply it therefore to cases which did not necessarily involve the consent of the person entrapped.

But such a consent if to be regarded at all, can be of no avail to the appellant, for it is a doctrine extending through all the departments of the law that whatever is produced by fraud is to be deemed as though it did not exist (1 *Bishop Crim. Law,* § 261).

In Reg. *v.* Hopkins (1 *Carr. & M.* 254), in which the charge was abduction, the father of the female child parted from her on the representation, which he believed to be true, that she was to go to live with a lady.  It was contended that consent having been given, no offense had been committed, but GURNEY, B., said the consent of the father having been obtained by the fraudulent representation of the prisoner, was in truth no consent at all, and proceeded to illustrate the proposition by several instances.  He then said : "I mention these cases to show that the law has long considered fraud and violence as the same."  The case is cited with approbation in Bishop upon Statutory Crimes (§ 635).

It only remains to say that the exceptions affecting the

evidence have been examined and none of them are vital. Those taken during the examination of Mr. Bonsall are perhaps the more formidable, but his testimony, which was chiefly of interviews with the appellant, was important on the question of intent, developing as it did the methods employed by the latter in conducting his business. It was a part and properly so of the *res gestæ*.

The exceptions to the charge and refusals to charge are equally valueless. The theory upon which the accusation against the appellant was tried and presented to the jury was within the principles laid down herein, and the appellant has no legal cause of complaint.

The judgment for these reasons should be affirmed.

Upon appeal to the court of appeals the following opinion was written :

ANDREWS, J.—The indictment, in the first count, charges that the defendant, on the 1st day of September, 1886, at the city of New York, with force and arms, did "feloniously and willfully inveigle and kidnap one Sarah Bowes, with intent to cause her, the said Sarah Bowes, without authority of law, to be taken out of the State, and to be kept and detained against her will." The second count is like the first, except that it charges that the intent of the defendant was to send the said Sarah Bowes, against her will, to Aspinwall, in the State of Panama. The evidence on the part of the prosecutor, which was uncontradicted, shows that the defendant, under the false pretense that employment had been secured for her as a governess in the family of one Madame De Blen, at Panama, induced the prosecutrix to take passage on a steamer for Aspinwall, for the purpose of engaging in that service, when, in truth and in fact the said Madame De Blen was the keeper of a house of prostitution at Panama, for which the defendant acted as procurer, and that his object and purpose in inducing the prosecutrix to go to Panama were that she should become an inmate of such house. Fortunately, before reaching Aspinwall, the prose-

cutrix was apprised of the true character of Madame De Blen, and, by the aid of fellow passengers, was enabled to return to New York, and was thereby rescued from the fate to which the defendant sought to consign her. The only serious question is, whether the evidence made out an offense within section 211 of the Penal Code. The section defines the crime of kidnapping, and, in the first subdivision, declares that a person who " seizes, confines, inveigles or kidnaps another with intent to cause him, without authority of law, to be secretly confined or imprisoned within this State, or to be sent out of the State, or to be sold as a slave, or in any way held to service, or kept, or detained against his will," is guilty of kidnapping.

There was no actual confinement or detention of the prosecutrix, nor any actual force used by the defendant. The prosecutrix consented to go to Aspinwall and voluntarily took passage for that port. But she did not consent to go there to enter a house of prostitution. The evidence shows that she would not have consented to go at all, except for the fraud practised upon her by the defendant. She consented to go for a lawful and innocent purpose, and the defendant, knowing that she was seeking honest employment, procured her consent to leave the State under pretense that such employment had been secured for her, but secretly designing that she should become an inmate of a brothel. He doubtless supposed that the prosecutrix, finding herself helpless and friendless in a foreign land, without means or chance of succor, would yield to his nefarious design. The statute uses, among other words, the word " inveigle." There are two elements which must be found in the conduct of the defendant to constitute the offense, first, seizure, confinement or kidnapping, which ordinarily imply actual force or an inveiglement, which, in the ordinary sense of the word implies the acquiring of power over another by means of deceptive or evil practises, not accompanied by actual force ; and, second, an intent by the defendant to cause the prosecutrix to be sent out of the State against her will. There

was, as has been said, no actual force. There was fraud and deception by which the will of the prosecutrix was subjected to that of the defendant and made subject to his control, which satisfies, we think, the charge of inveiglement in the indictment and establishes the first of the two elements mentioned.

The second essential element of the crime, viz., an intent to cause the prosecutrix to be sent out of the State against her will, is less plainly disclosed in the evidence, and raises a question of more difficulty. It does not appear that the defendant contemplated using actual force at any time. But he did contemplate procuring the prosecutrix to consent to go out of the State, and this by means of fraud and deception, without which he knew that she would not consent. Did the defendant, under the circumstances, intend that the prosecutrix should be sent out of the State against her will, within the meaning of the statute, or is the statute only applicable where the intent to cause another to leave the State contemplates physical coercion to that end? In Reg. *v.* Hopkins (*Carr. & M.* 254), the case of an indictment for the abduction of an unmarried girl under sixteen years of age, " against the will " of her father, it appearing that the consent of the parents was induced by fraud, the indictment was sustained, and GURNEY, B., said, " I mention these cases to show that the law has long considered fraud and violence to be the same." The language is very comprehensive, and if taken in its broadest meaning seems scarcely consistent with the English cases, which hold that the false personation of the husband, whereby a married woman consents to intercourse with a stranger, does not constitute a ravishment of the wife (Reg. *v.* Clark, 6 *Cox C. C.* 412 ; Reg. *v.* Young, 14 *Id.* 114). In Queen *v.* Dee (Crown Cases Reserved, Ireland), 6 *Crim. Law Mag.* 220 (1884), the court refused to follow the English cases and adopted the contrary view upon what seems to us very satisfactory grounds. The case of Beyer *v.* People (86 *N. Y.* 369), is quite apposite on the question of what constitutes a taking " against the will."

The defendant in that case was indicted under a section of the Revised Statutes, which declared that "every person who shall take any woman unlawfully against her will, with intent to compel her by force, menace or duress to marry him, or to marry any other person, or to be defiled," etc., shall, upon conviction, be punished, etc. It was held that the defendant having, by the false representation that he had procured for the prosecutrix a situation as a servant in a respectable family, induced her to go with him to a house of prostitution with intent to compel her to be defiled, was guilty under the statute, and that the inducing the prosecutrix to accompany him under the circumstances was a taking "against her will" within the statute. The principle decided covers the present case. The consent of the prosecutrix, having been procured by fraud, was as if no consent had been given, and the fraud being a part of the original scheme, the intent of the defendant was to cause the prosecutrix to be sent out of the State against her will. We think this construction of section 211 is not inconsistent with section 213. That relates to a consent to the very purpose of the defendant. The examination of the witness Bonsall as to confessions of the defendant, was carried, perhaps, beyond the legal limit. Part of the evidence of this witness was clearly competent, and this and the other evidence in the case, none of which was controverted, clearly established the crime charged, and the error, if any, did not prejudice the defendant. The judgment should be affirmed.

All concur.

Judgment affirmed.