THE PEOPLE OF THE STATE OF NEW YORK, Respond-
ENT, v. JOHN FITZPATRICK, Appellant.

*Kidnapping under Penal Code, sec. 211 — what constitutes it.*

A person is not shown to be guilty of the crime of kidnapping, under section 211 of the Penal Code, by proof that he has induced another to go out of the State by false and delusive promises that he could obtain work, at a specified com-pensation, at a distant place, although such person had reason to believe that such representations would not prove to be true.

Appeal by the defendant from a judgment of conviction of the offense of kidnapping, and from the sentence imposed thereunder, after a trial at the General Sessions of the Peace, in the city and county of New York, on the 25th day of September, 1889, before the court and a jury.

*William F. Howe*, for the appellant.

*McKenzie Semple*, for the respondent.

Bartlett, J. :

The defendant was indicted for kidnapping David Kennedy. There were two counts in the indictment. The first count need not be considered, as the district attorney virtually abandoned it upon the trial. The second count charges that the defendant, on the 9th day of May, 1889, " did feloniously and willfully, inveigle and kidnap one David Kennedy, with intent to cause him, the said David Kennedy, to be sent out of the State, to wit, to the State of Yucatan, in the Republic of Mexico, and to be there kept and detained against his will."

According to the testimony of the complainant, he met the defendant on May 9, 1889, at Ward's pier, in this city, at which the steamship City of Washington was lying at the time. The complainant went there in consequence of some statement, not disclosed by the evidence, which had been made to him by a stranger. He asked the defendant "What sort of a job it was?" presumably referring to some job which he had heard of from the stranger. Fitzpatrick said "it was a job in Mexico, $35, in American dollars, and board, a month." He also said it was a good job, and things were cheap there. The work was work on a railroad. The complainant further testified, in substance, that the defendant said that "the company" at Progreso, in Yucatan, was to pay the thirty-five dollars a month in American money and provide the board, when Kennedy and the other laborers, who went out at the same time, should arrive at their destination; and that Fitzpatrick said there was a job at Progreso waiting for them, and that Progreso was a healthy place.

After talking with the defendant, Kennedy signed a paper at his request, on which there were already twenty or thirty names, and then went on board the steamer. There is some testimony to the effect that, subsequently, when the complainant was coming down the gang-plank and told the defendant that he was coming ashore for tobacco, Fitzpatrick lifted his stick and spoke to him threateningly, telling him to get back into the ship; but this becomes unimportant, as the district attorney did not insist that Kennedy was sent out of the State by violence, and the learned trial judge so instructed the jury in his charge.

The complainant and his companions went to Progreso on the steamer. It is not necessary to review in detail their unpleasant experiences in Yucatan. After some delay they were given work in handling freight on a railroad, for which they were paid at the rate of a Mexican dollar a day, without board, instead of at the rate of thirty-five dollars a month in American money, with board. The price of food appears to have been so high that it was difficult, if not impossible, to make a fair living on such wages; in the opinion of the complainant the climate was unhealthy, and after working for a Mexican dollar a day at Merida for about two weeks, and boarding himself, he left the capital of Yucatan and managed to make his way back to New York.

The defendant, in testifying in his own behalf, denied having told Kennedy or anybody else that the men would receive thirty-five dollars a month in American money, or having said anything about their board or in reference to the climate in Yucatan. As to the making of these statements, however, the verdict of the jury is against him, and the case must be disposed of in this court on the assumption that he made them. I am also of the opinion, after reading all the testimony through very carefully, that it affords ample support for the inference, which must have been drawn by the jury, that the defendant knew the complainant would not find work on a railroad in Yucatan at the promised compensation, and for the further inference that the defendant's purpose in making the statements which he did make was to induce the complainant to go out of the State. Assuming all these facts the question is, whether the act of the defendant constitutes the crime of kidnapping under the provisions of the Penal Code.

The defendant was convicted under the first subdivision of section 211, which declares that any person is guilty of kidnapping who willfully "seizes, confines, inveigles or kidnaps another, with intent to cause him, without authority of law, to be secretly confined or imprisoned within this State, or to be sent out of the State, or to be sold as a slave, or in any way held to service or kept or detained against his will." In view of the proof the verdict must have been based on a finding that Fitzpatrick inveigled Kennedy for the purpose of causing him, and thereby did cause him, to be sent out of the State against his will; and if the evidence will support such a finding, the conviction will have to be sustained.

In the case of *The People* v. *De Leon* (109 N. Y., 226) it was said that an inveiglement, in the ordinary sense of the word, implies the acquiring of power over another by means of deceptive or evil practices, not accompanied by actual force; and it was held that the defendant had inveigled the complainant, within the meaning of the kidnapping statute, when he procured her consent to go to Panama upon the pretense that honest employment had been secured for her there, while, in fact, his secret design was that she should become an inmate of a brothel. But every deceptive or evil practice does not constitute an inveiglement; and, I think, a material distinction exists between the case at bar and the case of *The People* v.

*De Leon* (*supra*) in respect to the nature of the deception. There the promise of honest employment was not only to be broken, but a distinct affirmative wrong was to be done the complainant by forcing her into a life of prostitution in a foreign land. Here the facts are very different. The complainant was promised honest employment and he got it. The deceptive part of the promise, which was not kept, was the assurance that he should be paid thirty-five dollars a month in American money and receive his board, instead of which his wages were so meagre that he could only just live on them. I attach little importance to the alleged false representations concerning the climate of Yucatan and the prices there, since it is plain enough that they were not the procuring cause of the complainant's consent to go thither. He was induced to go by the promise of work at a specified compensation, and we are called upon to determine whether the making of a promise of this kind, by a person who knows it will not be kept so far as the rate of compensation is concerned, is an inveiglement within the legal signification of that term so as to subject the person making it to punishment as a kidnapper. I do not think it is.

In the case of *Ranney* v. *The People* (22 N. Y., 413, 417) it was said that a false representation, essentially promissory in its nature, had never been held to be the foundation of a criminal charge. In effect, the defendant's statements to Kennedy about work at Progreso were merely promises to give him work when he arrived at that port. Their true character is not changed by reason of their form. Saying to the complainant that there was a job waiting for him in Yucatan was only another way of promising him employment if he would go to that country. The legal effect of making such a promise with an intent not to fulfill it, so far as relates to the wages to be paid, must evidently be the same, if the contemplated employment were in New Jersey instead of in Mexico ; yet I hardly think it would be held that a man was guilty of kidnapping who came to this city and induced a laborer to cross the Hudson river on a ferry boat to Hoboken by a promise to give him work there at a dollar and a half a day, when he really intended to pay him only a dollar a day. Such a proceeding would be a shabby trick, but not a crime. As was said by COMSTOCK, Ch. J., in *Ranney* v. *People*, already cited, the offense of making a false and

delusive promise, with no intention of performing it, is not indictable; and, as has been suggested, the deception in the *De Leon Case* consisted not only in the design to withhold honest employment from the complainant, but to compel her to enter upon a life of shame.

In view of the great hardship sometimes inflicted upon those who are induced by false promises to go from this State to foreign lands, the legislature might well provide for the punishment of the wrongdoers in such cases through the agency of the criminal law; but, under the law as it now is, I do not think the facts disclosed in the record before us authorized the conviction of the defendant of the crime of kidnapping.

In my opinion the judgment should be reversed.

Van Brunt, P. J., and Barrett, J., concurred

Judgment reversed.