THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK B. BROWN, Appellant.

*Abduction — defense that the complainant was not of previous chaste character — conflict of evidence — when the verdict of the jury will not be disturbed — competency of evidence — charge to the jury.*

APPEAL by the defendant, Frank B. Brown, from a judgment of the Court of Sessions of Onondaga county, entered in the clerk's office of that county on the 14th day of December, 1891, adjudging him to be guilty of the crime of abduction, and also from an order denying the defendant's motion for a new trial entered in said clerk's office on the 16th day of December, 1891.

Defendant was jointly indicted with Arthur Nunn and Nellie Nunn charged with the crime of abduction. The first count charges the inveigling of Lilly Long to the city of Syracuse, "she being then and there an unmarried female of previous chaste character, into a

certain hotel in the city of Syracuse known as the Clarendon Hotel, for the purpose of prostitution and sexual intercourse." The second count charges that the same defendants did, on the 15th day of September, 1891, at the village of Bridgeport, in the town of Sullivan, county of Madison, "inveigle and entice one Lilly Long, she being then and there an unmarried female of previous chaste character, from said village of Bridgeport and town of Sullivan, to the city of Syracuse, in this county, and into a certain hotel in said city of Syracuse known as the Clarendon Hotel, for the purpose of prostitution and sexual intercourse." The third count charges that the defendants "feloniously did take, receive, employ, harbor and use, and cause and procure to be taken, received, harbored and used, one Lilly Long, she being then and there an unmarried female under the age of sixteen years, for the purpose of prostitution and sexual intercourse, against the form of the statute in such case made and provided." A trial was had at the Onondaga Sessions and appellant was convicted. A motion for a new trial was made and denied and the defendant was sentenced to State's prison at Auburn for the term of four years and seven months. Defendant appealed from the judgment and the order denying the motion for a new trial.

*William Kennedy*, for the appellant.

*B. J. Shove, District Attorney*, for the respondent.

HARDIN, P. J. :

In August, 1891, the defendant kept a hotel in the village of Bridgeport; he sent for Lilly Long to come to his hotel and employed her, and she commenced her services on the seventeenth of August; in the month of September Nunn and his wife visited the hotel, and while spending an evening there some wine was procured and a conversation held in respect to going to the city of Syracuse to attend the State fair which was to be held there in September. Mrs. Nunn suggested that they could stop at her cousin's on Bear street. On Monday, the week of the fair, Mrs. Nunn sent word by the defendant Brown that she would be ready to start Tuesday morning. On that morning, September fifteenth, Lilly Long went to Mrs. Nunn's and joined her, and they started for the city of Syracuse, driving a horse. Brown and Nunn started together and

overtook them and passed them   When Mrs. Nunn and Lilly reached the city they drove to the Clarendon Hotel and found Nunn standing out in front; they alighted and went up into the sitting room and Brown and Nunn followed, taking some wine, and they all four of them partook thereof and had dinner shortly after. Free use was made of wine thereafter by the parties while they were together for some three days in the city of Syracuse. Apparently, Lilly first protested against the use of wine, but was assured by Mrs Nunn that it would do her no harm. During the afternoon, Nunn made some solicitation or proposition to Lilly, which she rejected, and they went to Gang's saloon and obtained a meal, and were supplied with more wine; apparently, they remained there until near eleven o'clock at night, when the four went back to the Clarendon Hotel, and from there to another saloon kept by a woman, at which they had more to drink, then they returned to the hotel and Nunn made some proposition that they all sleep together. After some conversation had between the two men one side, Mrs. Nunn took the complainant into a bedroom and told her to go to bed and left her there; the complainant undressed and went to bed, and shortly after she had gotten to sleep, the defendant Brown approached her room, opened the door, " and that woke " her up   The complainant testified, viz.: " Brown spent the night with me there, and had sexual intercourse with me that night; I had never had intercourse with any other person before that night; in the morning Brown said, ' I wonder if Nunn has gone home yet;' he said if he got me in trouble that I could ask Mrs. Nunn, and she would see about getting me out; he said he wondered if Arthur had signed his right name, and I says, ' Why, didn't you?' and he said, ' F. P Baker;' I saw Mrs. Nunn that morning in her bedroom; she occupied room 26 on the second flight; that was on the floor above number 6." It appears also by her testimony that the four parties stayed at the hotel, partaking of wine, and that the defendant would get it sometimes and sometimes Nunn, and that they remained at the hotel until dinner time; they went out onto the streets Wednesday after dinner, and the defendant bought a dress for Lilly, and then the four went back to the hotel, and the defendant hitched up his horse and took Mrs. Nunn and Lilly to a saloon, where they remained until evening; when they returned to the Clarendon, they went into the sitting room,

and apparently they were all somewhat intoxicated. After the complainant went to bed, the appellant visited her room and occupied the room with her that night. "Nunn and Mrs. Nunn stayed in number 1, on the same floor with number 6, that night." None of the parties visited the fair; they started to return to Bridgeport Thursday, and the complainant and Brown rode together until they approached the village and just beyond Messina Springs, when they all went to Mrs. Nunn's house, some time after midnight, where they were supplied with whiskey; the complainant remained there all night, and she returned to Brown's hotel on Friday afternoon and worked that afternoon. In the course of defendant's testimony, he admits occupying a room with the complainant on Tuesday night; he states, however, that when he reached her room, "she got up and unlocked the door, and I went in and went to bed and stayed there all night; when I got in the room, the girl was getting into bed; she was disrobed;" and in referring to the second night, he says: "I got the key of my room at the office, and the girl went to bed first; in twenty minutes or half an hour afterwards, I went to bed. When I got up to the room, Miss Long was in the room; she had her clothes off, and must have been in bed; the door was locked that night and I knocked; she wanted to know who was there, and I told her, and she got up and unlocked it; after I got in there was nothing of any account said between us that I remember. \* \* \* After we went to bed that night she told me that Nunn had been to the room, and that she wouldn't let him in. She said that Arthur had been to the room, but he couldn't get in while I was around there. I remained all night with her, and got up perhaps eight o'clock the next morning; we all four had breakfast there at the hotel; we was around the city as usual that day. \* \* \* I bought her a dress there; she asked me for some money at the Clarendon; she said she wanted while here to get a dress and some things, and I told her to go to Dey's and get what she wanted, and I would happen around there and pay for it, and she and Mrs. Nunn went up there, and before they came out I went up, and they had got their stuff, whatever it was, and I paid for it." The defense made to the charge contained in the indictment seems to have been upon the theory that the complainant was not of previous "chaste character," and to substantiate it the defendant testi-

fied that previous to the occasion of being at Syracuse with her he had perpetrated several acts of sexual intercourse with her in his hotel, and he called witnesses who gave evidence tending to show she had allowed sexual intercourse prior to the excursion to Syracuse. Such evidence was contradicted. The complainant testified that defendant had intercourse with her Tuesday night in the Clarendon Hotel, and that she "had never had intercourse with any other person before that night." After seeing the witnesses and hearing all the evidence the jury have found a verdict of guilty. There was such a conflict in the evidence that it was for the jury to ascertain where the truth was, and to determine the questions of fact presented at the trial. We cannot say the verdict is contrary to the weight of the evidence. It was natural that the jury should distrust and disbelieve the evidence given by the defendant and his witnesses as to the acts of sexual intercourse alleged against her, and a want of chastity of the complainant prior to the occasion of the defendant's intimacy and intercourse with her at the Clarendon Hotel. We are not inclined to disturb the verdict upon the questions of fact presented to the jury by asserting our belief of the defendant's testimony instead of the evidence furnished by the prosecution. Section 282 of the Penal Code provides that "A person who * * * 2. Inveigles or entices an unmarried female of previous chaste character into a house of ill-fame, or of assignation, or elsewhere, for the purpose of prostitution or sexual intercourse, is guilty of abduction." As already intimated, we think there was evidence before the jury which warranted them in finding all the material facts required to bring the defendant's case within the provisions of the statute. (People v. De Leon, 109 N. Y. 226.) We think there was sufficient evidence given tending to corroborate the complainant, and that the trial judge was warranted in saying, as he did in the course of his charge: "It is for you to say whether this girl has been corroborated, or, in the language of the statute, supported." (The People v. Brooks, 131 N. Y. 321; Penal Code, § 283; People v. Brandt, 14 N. Y. St. Repr. 419; People v. Everhardt, 104 N. Y. 594.) The appellant insists that a new trial should be had, because of alleged errors committed upon the trial by the court, and we must consider the exceptions :

(1) It was not error to allow the complainant to state the interview

she had with Mrs. Nunn in the presence of the defendant, when talk was had as to the excursion to be made to Syracuse or the fair, and that on that occasion all four of the parties drank together. Nor was it prejudicial to the defendant to allow the complainant to state that when she and Mrs. Nunn reached the city she inquired where they were to stop. It was the theory of the prosecution that Nunn and his wife were acting in concert with the defendant, and it was proper to show the acts and doings when carrying forward the plans to visit Syracuse, and what took place between them while acting together under a plan which the defendant had helped form and facilitated the execution thereof. The remark of Nunn, in the absence of the defendant, to the complainant, tended to show the relations he held to her, and though it be said to have been improperly received it did not prejudice the defendant. (*People* v. *Gonzalez*, 35 N. Y. 49; *People* v. *Brooks, supra;* § 542, Code Crim. Proc.)

(2) The complainant testified that Wednesday evening, after the four returned to the Clarendon Hotel, that someone of them spoke about going to bed; she was then asked, "Who spoke about going to bed?" This was objected to by the defendant, and the objection overruled and the defendant excepted; she answered "Nunn did; he wanted us all to sleep together again, and then that Brown said he wouldn't. * * * I sat down in a chair because I was so dizzy and sick to my stomach, and then in a little while she told me to go to bed and shut the door, and went out; I was intoxicated then; Mr. Brown came in the room that night and occupied the room with me that night; Nunn and Mrs. Nunn stayed in number 1, on the same floor with number 6, that night." The evidence was properly received, as it bore upon the conduct of the defendant, and tended to establish the important elements of the crime with which he was charged.

(3) Defendant testified that he registered at the Clarendon as " F. B. Baker;" his counsel asked him, " Why did you register that way?" It was objected to, and the objection sustained. In his cross-examination he testified, viz.: " At the time I registered I had concluded that I would have sexual intercourse with the girl, and wanted to stay over night; I registered under the name of Baker because I didn't want to do anything to hurt myself or the reputation of the girl; I didn't want everybody to know I was there, and

on account of my wife; I thought of my wife a good many times; it first occurred to me that I wanted to put Baker down on account of my wife when I signed my name; I didn't want to do anything to hurt anybody's reputation." It would seem that he was allowed to and did sufficiently elaborate upon the reason why he registered "that way," and the exception ought not to avail the appellant.

(4) The acts and declarations of defendant, testified to by Eva Fox in her cross-examination, tended to show defendant's intimacy with and relations to the complainant, and to some extent bore upon the witness herself unfavorably, and were not improper on cross-examination.

Some other rulings are referred to in the argument of the learned counsel for the appellant. We have looked at them and are of the opinion that they do not present prejudicial error, and that under the rule laid down in section 542 of the Code of Criminal Procedure we ought not to disturb the verdict by reason thereof. (*People v. Burns*, 33 Hun, 296.)

In the course of the charge delivered by the trial judge he referred to section 282 of the Penal Code, repeating its language to the jury, and also informing them that the indictment charged the defendant with having enticed Lilly Long to visit Syracuse and the Clarendon Hotel for the purpose of sexual intercourse, " she then being an unmarried female of previous chaste character." He then repeated the issues for the jury to consider, and he defined a portion of the statute by saying : " To inveigle, entice, persuade, induce — they all have a meaning of about a similar character, all those words have. And you readily apprehend what the language of the statute means, when it states that a person who inveigles or entices another, an unmarried female of previous chaste character. Now, chastity, in law, has a plain, simple meaning. It relates to the question whether a woman has improper sexual relations with a man or not. In the case of an unmarried woman it relates to the question whether she has had sexual intercourse with any man or not." He then further commented upon the evidence, informing the jury that it was for them to say whether the girl was corroborated, and in that connection he called their attention to section 283 of the Penal Code, and while commenting upon that he very properly observed, as we think, as follows : " As to that particular branch of the case the

defendant himself corroborates her, that he did have sexual inter-
course with her, but that is not the offense charged; it is only a fact in
the case from which you may draw such conclusions as may logically
follow as to the purpose of her being taken to that hotel.    Now, as to
whether there is any supporting evidence or not upon the question
of her being enticed or inveigled to come here; " then he somewhat
*in extenso* refers to other evidence tending to corroborate the testi-
mony of the complainant, and left the question to the jury to
determine whether she was corroborated or supported by other evi-
dence.    In that respect his charge was in accordance with the rule
laid down in *People* v. *Everhardt* (*supra*).    We think no error was
committed in refusing to charge the jury that they must find that
there was a conspiracy between the defendant and Nunn and his
wife, " by which the girl Long was to be inveigled into the hotel or
some other place for the purpose of sexual intercourse or prostitu-
tion."    The court understood the request to be that he was requested
to charge : " If Brown is not shown to have enticed her, then, in
order to convict, they must show a conspiracy."    It is to be borne
in mind he had already charged the jury that if Brown had inveigled
or enticed the girl for the purposes of prostitution or sexual inter-
course, that the offense was made out as to him    We think the
position taken by the trial judge was sufficiently favorable to the
defendant and that the judge properly refused to charge : " That
the jury would not have the right to find from the evidence that the
defendant personally and alone induced the girl or enticed and
inveigled the girl Long into the hotel for the purpose of prostitu-
tion or sexual intercourse."    It was for the jury to determine the
questions of fact involved in the request.    We think the defendant
failed to obtain an exception to any refusal to charge or to any part
of the charge as delivered which requires us to interfere with the
verdict.    The great trouble with the plaintiff's case is that the jury
believed the complainant, and such evidence as was brought tending
to support her version of the matters referred to and involved in the
charges contained in the indictment, and failed to believe the testi-
mony of the defendant, and of such witnesses as he called tending
to support his theory of the case.

The conviction, order and judgment of the Court of Sessions of
Onondaga county must be affirmed, and the clerk directed to enter

judgment and certify a copy of the entry to the clerk of Onondaga county, pursuant to section 549, etc., of the Code of Criminal Procedure.

MERWIN and PARKER, JJ., concurred.

So ordered.