OPINION OF THE COURT
John J. Leahy, J.
This is an omnibus motion made on behalf of the three named defendants for an order, inter alia, dismissing the *236 indictments herein upon the ground that the evidence before the Grand Jury was not legally sufficient to establish the commission by the defendants of the offenses charged or any lesser included offense. Said motion (pursuant to the provisions of CPL 210.30, subds 1, 2) is accompanied by a motion to inspect the Grand Jury minutes for the purpose of determining whether the evidence before the Grand Jury was legally sufficient to support the charges or any lesser charge contained in such indictments.
The court will address itself specifically to the prayer for the afore-mentioned relief sought in defendants’ omnibus motion.
The motion to inspect the Grand Jury minutes is granted, and based upon such inspection, all of the papers submitted hereon and the thorough and protracted arguments of all counsel, the court makes the following findings and conclusions.
In view of the unusual factual background to the original presentment of this case to the Grand Jury and, above all, the unique theory of mental culpability advanced by the People as the foundation upon which they rely for the finding of criminal responsibility herein, and the potentially far-reaching ramifications of the court’s legal conclusions in regard thereto, the court is constrained to review in detail the underlying facts, applicable law and the legal conclusions to be drawn therefrom.
At the outset, the court wishes to commend both defense counsel and the District Attorney’s office on their obviously assiduous labors in the preparation of their memoranda of law and legal arguments based thereon.
Under Indictment No. 2012/76, the Grand Jury accused the defendants, Angus Murphy and Iskcon, Inc., of acting in concert to commit the crimes of (1) attempted grand larceny in the first degree, in that on or about April 12, 1976 they did attempt to steal from Eli Shapiro property, namely money by extortion by instilling fear in Eli Shapiro that physical injury would be caused to his son, Edward Shapiro, in the future, and (2) the crime of unlawful imprisonment in the first degree, in that between May, 1973 and September 7, 1976 they did restrain the afore-mentioned Edward Shapiro under circumstances that exposed the said Edward Shapiro to a risk of serious physical injury.
Under Indictment No. 2114/76, the Grand Jury indicted the *237 defendants, Harold Conley, also known as Trai Das, and Iskcon, Inc., for the crime of unlawful imprisonment in the first degree, in that on or about and between August 3, 1976 and September 7, 1976 the said defendants while acting in concert did restrain one, Merylee Kreshour, under circumstances that exposed her to a risk of serious physical injury.
It is noted that the Grand Jury’s initial investigation which commenced on September 7, 1976 was on the complaint of Merylee Kreshour alleging that she was kidnapped — not by the named defendants herein — but rather by her mother, Edith Kreshour, and one Galen Kelly. The uncontradicted testimony adduced in respect thereto shows that Merylee Kreshour (who at the time was and to the present day remains a member of Iskcon, Inc.) was forcibly taken from a street in Queens County on August 3, 1976 by her mother and others and for a period of four days was subjected to a treatment referred to as "deprogramming”. This treatment, the mother testified, was administered in order to liberate her daughter’s mind and to restore her "free will”. The mother testified further that her daughter was the victim of "mental kidnapping” by the defendant Iskcon, Inc., and that by physically taking her daughter into custody she was "rescuing her”.
On September 8, 1976 the Grand Jury voted not to indict either Galen Kelly or Edith Kreshour, and instructed the District Attorney’s office to continue its investigation into any alleged illegal activities of the said Iskcon, Inc.
Thereafter, numerous witnesses, comprised of experts in the fields of psychiatry, medicine, social work, religion and also parents and relatives of former members of the defendant corporation, as well as former members themselves, appeared and testified before the Grand Jury. As a result thereof, the Grand Jury returned the two instant indictments that are the subject of this motion.
The defendant Iskcon, Inc., is a nonprofit religious corporation, a legal entity by virtue of the issuance of a certificate of incorporation for the International Society for Krishna Consciousness pursuant to the Religious Corporations Law of the State of New York. The defendant Harold Conley was the supervisor of Women at the New York Temple for the International Society for Krishna Consciousness (Iskcon, Inc.). The defendant Angus Murphy was president of the New York Temple.
Merylee Kreshour became interested in the Hare Krishna *238 cult during the summer of 1974 while working as a secretary before returning to college in September. After going to meetings she decided to join the organization and moved into the temple. Her average day started before 4 o’clock by praying, studying, meditation and chanting until about 8:30 a.m. when breakfast was served. The chanting lasted two to three hours each day, consisting of repeating the Hare Krishna Mantra Meditation continuously. In order to keep track of the chanting, each time a chant is finished a bead is moved from a strand of 108 beads worn around the neck. After breakfast the day’s activities began with Merylee leaving the temple to distribute Krishna literature, selling magazines and soliciting contributions. Lunch was served at 3:30 p.m. and consisted of fruit, vegetables and juice. She had two meals a day and went to sleep at 7:30 p.m. The money she received from selling books and literature, as well as the donations, were turned over to the treasury of the organization and in return she was provided food, clothing and shelter.
Edward Shapiro became interested in the cult when he was in high school and during the first year of college he became an active member. However, he did not live in a temple because he is a diabetic, requiring daily insulin and a special diet which does not conform to the religious beliefs of the Krishna organization. He ultimately left college and started living at a temple. On April 12, 1976 Edward returned from a pilgrimage to India. His father went to Kennedy Airport to greet him when he returned from India and it was obvious to his father as a medical doctor that his son needed immediate medical attention. He wanted Edward to have a checkup but his son said he would not talk to his father unless his father wrote out a check for $20,000 to the president of the New York Temple; otherwise, he would have nothing to do with his father.
Based on the afore-stated facts, the defendants were charged, as heretofore recited, with the crime of unlawful imprisonment in the first degree, in that they restrained the said Merylee Kreshour and Edward Shapiro under circumstances that exposed them to a risk of serious physical injury and, further, the defendants, Angus Murphy and Iskcon, Inc., were charged with attempted grand larceny in the first degree.
In reference to the charge of unlawful imprisonment, section 135.10 of the Penal Law provides as follows: "A person is *239 guilty of unlawful imprisonment in the first degree when he restrains another person under circumstances which expose the latter to a risk of serious physical injury” (emphasis added).
The two elements of this crime are the restraint of another person thereby exposing such person to a risk of serious physical injury. The term "restrain” is defined in section 135.00 of the Penal Law as restricting a person’s movements intentionally and unlawfully in a manner as to interfere substantially with such person’s liberty by moving him from one place to another, or by confining him either in the place where restriction commences or to a place to which he has been moved, without consent, and with knowledge that the restriction is unlawful. A person is so moved or confined "without consent” when it is accomplished by:
"(a) physical force, intimidation or deception or
"(b) any means whatever, including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and the parent, guardian or other person or institution having lawful control or custody of him has not acquiesced in the movement or confinement.”
It is conceded by the People that no physical force was utilized by the defendants against Merylee Kreshour or Edward Shapiro, and, further, that the said two individuals entered the Hare Krishna movement voluntarily and submitted themselves to the regimen, rules and regulations of said so-called Hare Krishna religion, and it is also conceded that the alleged victims were not in any way physically restrained from leaving the defendant organization. However, it is posited by the People that the nature and quality of the consent of the two alleged victims must be examined as it is asserted by the People that such consent was obtained by deception, and by the device of intimidation, control and the continued restraint was maintained over them. From this premise the People draw the conclusion that the two alleged victims were deceived or inveigled into submitting themselves "unknowingly to techniques intended to subject their will to that of the defendants” and that same resulted in "an evil consequence”. The entire crux of the argument propounded by the People is that through "mind control”, "brainwashing”, and/or "manipulation of mental processes” the defendants destroyed the free will of the alleged victims, obtaining over them mind control *240 to the point of absolute domination and thereby coming within the purview of the issue of unlawful imprisonment.
It appears to the court that the People rest their Case on an erroneous minor premise to arrive at a falacious conclusion. The record is devoid of one specific allegation of a misrepresentation or act of deception on the part of any defendant. Concededly, both Merylee Kreshour and Edward Shapiro entered the Hare Krishna movement voluntarily where they remain to this day as devotees of that religion. There is not an iota of evidence to even suggest that false promises were made to either of them or to indicate any act or conduct on the part of the defendants that might be construed as deceptive.
As to the premise posed by the People that the religious rituals, daily activities and teachings of the Hare Krishna religion constitute a form of intimidation to maintain restraint over the two alleged victims, the court finds not only no legal foundation or precedent for same but a concept that is fraught with danger in its potential for utilization in the suppression — if not outright destruction — of our citizens’ right to pursue, join and practice the religion of their choice, free from a government created, controlled or dominated religion, as such right is inviolately protected under the First Amendment of the Constitution of the United States and section 3 of article I of the New York State Constitution.
It is at this juncture the court sounds the dire caveat to prosecutional agencies throughout the length and breadth of our great Nation that all of the rights of all our people so dearly gained and provided for, under the Constitution of the United States and the Constitutions of all States of our Nation shall be zealously protected to the full extent of the law. The entire and basic issue before this court is whether or not the two alleged victims in this case, and the defendants, will be allowed to practice the religion of their choice — and this must be answered with a resounding affirmation. The First Amendment to the United States Constitution prohibits the establishment of religion by our Federal legislators. Neither Congress nor the States may establish a religion or compel individuals to favor one religion over another. This precept was set forth by the forefathers of our country in the most explicit and unequivocal language in the articles in addition to and in amendment of the Constitution of the United States. In the First Amendment it is mandated that: "Congress shall make *241 no law respecting an establishment of religion, or prohibiting the free exercise thereof’ (emphasis added).
We are given further guidance by the provisions of the Constitution of the State of New York that confirms, enhances and elaborates upon this cherished right. Section 3 of article I of the New York Constitution provides: “The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all mankind; and no person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this state.”
Our country is a pluralistic society in religion. The First Amendment of the Constitution of the United States lays the foundation of the full play and interplay of all faiths. The freedom of religion is not to be abridged because it is unconventional in its beliefs and practices, or because it is approved or disapproved of by the mainstream of society or more conventional religions. Without this proliferation and freedom to follow the dictates of one’s own conscience in his search for and approach to God, the freedom of religion will be a meaningless right as provided for in the Constitution.
Any attempt, be it circuitous, direct, well intentioned or not, presents a clear and present danger to this most fundamental, basic and eternally needed right of our citizens — freedom of religion.
The Hare Krishna religion is a bona fide religion with roots in India that go back thousands of years. It behooved Merylee Kreshour and Edward Shapiro to follow the tenets of that faith and their inalienable right to do so will not be trammeled upon. The separation of church and State must be maintained. We are, and must remain, a nation of laws, not of men. The presentment and indictment by the Grand Jury herein was in direct and blatant violation of defendants’ constitutional rights.
The giving up of one’s wordly possessions, social contacts, and former way of life — and the court clearly recognizes and sympathizes with the resultant hurt, fear and loneliness of loved ones left behind — is not a matter under the present facts to be subject to judicial scrutiny by way of the invocation of criminal prosecution. Other than showing that Merylee Kresh *242 our, Edward Shapiro and others subjected themselves to the discipline and regimentation of this particular legally licensed, religious group, whereby they are apparently seeking their individual self-chosen road to eternal salvation, there was not a scintilla of evidence presented to the Grand Jury to indicate the practice of fraud, deception, intimidation or restraint, physical or otherwise, on the part of these defendants. Religious proselytizing and the recruitment of and maintenance of belief through a strict regimen, meditation, chanting, self-denial and the communication of other religious teachings cannot under our laws — as presently enacted — be construed as criminal in nature and serve as a basis for a criminal indictment.
The court points out that the numerous and well-documented cases cited by the People do, in fact, show, and correctly so, that "physical restraint” need not be shown as a basis for prosecution herein, but that the unlawful restraint may be accomplished by "inveiglement” (former Penal Law of 1909) or by a "fraudulent misrepresentation” that could constitute "deception negating consent”. Succintly stated, in one case a victim was induced to leave New York for Panama on the promise of a job as a governess when in fact while en route the victim learned the job was with a house of prostitution (People v De Leon, 109 NY 226). In another case, the complainants were induced to enter defendant’s car upon the fraudulent representation that they were needed as baby-sitters, when in fact the defendant wanted to engage them in indecent sexual advances (State v Gough, 257 NC 348). A third case involves the inducement of the victim to enter a wooded area upon the representation they would search for squirrels, when in fact it was defendant’s purpose to assault the complainant (State v Murphy, 280 NC 1).
The further cases cited in the People’s memorandum involve psychologically induced confessions, mental disease or defect, hypnosis to destroy a free will, intoxication and coverture. However, in every case cited the criminal intent was shown, by the proof adduced therein, of the defendants seeking to compel their victims to perform some illegal act and that same was accomplished by false representations. In the case at hand, neither of these elements are present.
The final thrust of the People’s argument aims at the unlawful restraint of an individual who has been declared incompetent and, therefore, by law the consent of the parent *243 or guardian must be obtained, as set forth in subdivision (1) of section 135.00 of the Penal Law. In the case of Edward Shapiro, a Massachusetts court issued an order appointing Mrs. Shapiro as conservator of his property. There is a serious issue as to whether under the United States Constitution full faith and credit would be given to our sister State’s aforesaid order. This question is moot, however, in view of the court’s finding that the order does not come within the purview of our statute — as same merely appoints a conservator of the property rather than a guardian of his person.
To sustain this indictment would open the so-called "Pandora’s Box” to a plethora of unjustified investigations, accusations and prosecutions that would go on ad infinitum, to the detriment of the citizens of our State and placing in jeopardy our Federal and State Constitutions.
The concept of mind control or brainwashing is not a crime in and of itself. The fact that indoctrination and constant chanting may be used as a defense mechanism to ward off what another person is saying or doing is devastating and it is equally devastating when used as a technique for brainwashing or mind control. It may even destroy healthy brain cells. It may also cause an inability to think, to be reasonable or logical. However, this does not constitute a crime. Neither brainwashing nor mind control per se is a crime. It cannot be used as the basis for making out the elements of the crimes charged herein.
The court finds that as to both indictments, No. 2012/76 and No. 2114/76, there is insufficient legal evidence to sustain the offenses charged or any lesser included offense.
Based on the foregoing, the motions to inspect the Grand Jury minutes and to dismiss the indictments on the ground of insufficient legal evidence are granted. The balance of these motions is denied as moot. The indictments are hereby dismissed.