OPINION OF THE COURT
Gerard E. Delaney, J.
What may be stated as relatively simple facts often belie underlying issues of extreme emotion and constitutional guarantees. This is basically a motion by defendant, the Holy Spirit Association for the Unification of World Christianity (hereinafter Unification Church) to dismiss plaintiff’s four remaining causes of action as against it for an alleged failure to state a cause of action under CPLR 3211 (subd [a], par 7).
Plaintiff, Charles F: Meroni, Jr., is the administrator of the estate of his late son, Charles Thomas Meroni. Letters of administration were granted to plaintiff in the Circuit Court, Lake County, Illinois (Probate Division) on December 6,1979. Defendant, Unification Church, has its United States headquarters in New York State and was founded by the Korean National, Sun Myung Moon. In substance, it is alleged by plaintiff that some time during the late summer and early fall of 1977, codefendant, the Collegiate Association for the Research of Principles (hereinafter CARP) set out to recruit the decedent, Meroni, to become a member and employee of the Unification Church, knowing that he was at that time, emotionally disturbed; that decedent, Meroni, entered into a training program for membership in the Unification Church and received instruction by the Unification Church at Tarrytown, New York, which such instruction was “intentionally designed by Unification Church to take control over decedent, Meroni’s mind and judgment” and “exercis[ed] over the decedent, Meroni, a form of hypnotic control, information control and response control, sometimes called ‘brainwashing’ ”; that as a result of such intensive program, Unification Church directly caused the decedent, Meroni, to suffer an emotional breakdown and that after “the decedent, Meroni, escaped from the physical controls of the Unification Church in November, 1977, he returned to his parents’ home in Illinois” and that as a result “the Unification *1063 Church, through its techniques and indoctrination, brainwashed and took control of the faculties of the decedent, Meroni, and willfully through its indoctrination caused him to take his own life on or .about January 9, 1978.”
All causes of action against codefendant, CARP, were dismissed on or about October 7, 1981, by the Honorable Anthony J. Ferraro. There remain, therefore, four separate claims against the defendant, Unification Church, which defendant claims fail to state a cause of action for which relief can be granted under New York State law.
Upon a motion to dismiss a complaint for legal insufficiency, the court must assume that its allegations are true. (Cf. Denihan Enterprises v O’Dwyer, 302 NY 451, 458.) The court must deem the complaint to allege whatever can be imputed from its statements by a fair and reasonable intendment, however imperfectly, informally or illogically facts may be stated therein. (Cf. Condon v Associated Hosp. Serv., 287 NY 411.) “In making its analysis, the court is not bound by the construction [of] theories of the parties * * * The test of the sufficiency of a complaint is whether it gives sufficient notice of the transactions, occurrences, or series of transactions or occurrences intended to be proved and whether the requisite elements of any cause of action known to our law can be discerned from its averments”. (Pace v Perk, 81 AD2d 444, 449.)
In paragraphs “18” and “19” of plaintiff’s amended complaint, he claims in his own behalf that he “sustained emotional upset, loss of income, continuing fear, fright and disturbance in his own life caused by the emotional breakdown and brainwashing of his son”. In essence, plaintiff claims in his own right a cause of action for mental distress as a bystander of defendant’s allegedly tortious acts. Whatever may be the merit of plaintiff’s other causes of action, it is clear that the instant cause cannot survive nor indeed, does it state a proper cause of action for “bystander mental distress” in light of the Court of Appeals recent decision in Bovsun v Sanperi (61 NY2d 219). There is no allegation in the complaint that defendant’s alleged conduct created an “unreasonable risk of bodily harm to [this] plaintiff” (p 223) nor are there allegations of a “contemporaneous observation of serious physical injury or death inflicted by *1064 the defendant’s conduct on” (p 224) plaintiff’s son in his presence. The cause of action enunciated in plaintiff’s amended complaint in paragraphs “18” and “19” is dismissed.
In paragraphs “20” and “21”, plaintiff, Charles F. Meroni, Jr., claims in his own behalf against the Unification Church in that it allegedly “through their techniques and indoctrination brainwashed, and took control of the faculties of the decedent, Meroni, and willfully through their indoctrination wrongfully caused him to take his own life on or about January 9, 1978”.
In paragraph “20” of such cause of action, plaintiff incorporated by reference therein that portion of paragraph “16” which alleged “that the distributees of the decedent, Meroni, sustained pecuniary injuries including, without limitation, medical expenses, loss of income and funeral expenses”. By fair implication, plaintiff, Meroni, Jr., having alleged that he is the administrator of his son’s estate and that by such terminology it is understated that his son died intestate and that he is the father of decedent, it is apparent that Meroni, Jr. is a distributee of the estate and that as indicated above via paragraph “16” of the amended complaint the distributees of the decedent, Meroni, sustained pecuniary injuries and, therefore, claims in his terminology “in his own behalf as against said defendant”. Accordingly, defendant’s objections to plaintiff, Meroni, Jr.’s right to recover “in his own behalf” are without merits to this extent. The question of whether or not Meroni, Jr. has stated a sufficient “wrongful act, neglect or default” of defendant, i.e., a tort, “which caused the decedent’s death” is discussed below. (Cf. EPTL 5-4.1, 5-4.3.)
It is plaintiff’s causes of action numbers “First” and “Second” brought on behalf of the estate per se which form the more troublesome issues. Cause of action number “Second” is one sounding in wrongful death (cf. EPTL 5-4.1) and cause of action number “First” which alleges in substance that defendant, Unification Church, while knowing that decedent was emotionally disturbed and susceptible to forced employment for defendant “subjected decedent, Meroni, to highly programmed behavioral control tech *1065 ñiques in a controlled environment thereby narrowing his attention and causing him to go into a trance. He was subjected to an intensive program of heavy and protracted exercises, intense fasting from foods and beverages, a program of chanting and related activities all intentionally designed by the Unification Church to take control of decedent, Meroni’s mind and judgment [thereby] exercising over the decedent, Meroni, a form of hypnotic control, information control and response control, sometimes called ‘brainwashing’ [and] as a direct result * * * directly caused the decedent, Meroni, to suffer an emotional breakdown”. Cause one further states that the decedent Meroni, therefore, in his lifetime “sustained pecuniary injuries for his own emotional disturbance caused and aggravated by wrongful acts of the defendants”.
For purposes of cause of action numbered “First” the court deems especially relevant those allegations which in substance state “the Unification Church knowing that [decedent Meroni] was at that time emotionally disturbed and susceptible to forced employment in and for the said Unification Church * * * subjected the decedent, Meroni, to highly programmed behavioral control techniques * * * intentionally designed by the Unification Church to take control over decedent, Meroni’s mind and judgment [thereby becoming] a form of hypnotic control, information control and response control, sometimes called ‘brainwashing’ Defendant alleges that “brainwashing” is not a tort and that indeed, the alleged conduct it undertook is quite ordinary and socially acceptable behavior, i.e., intense physical exercise, intense fasting, chanting and physical and mental isolation. Defendant Church says what is alleged is no more onerous than the condition of basic military basic training or boarding school. What exactly is “brainwashing”? It is doubtful that any two authorities could agree entirely on such a definition. However, it is defined in part in Webster’s Third New International Dictionary as “the forcible application of prolonged and intensive indoctrination sometimes including mental torture in an attempt to induce someone to give up basic political, social, or religious beliefs and attitudes and to accept contrasting regimented ideas * * * the conquest not of a *1066 man’s body but of his mind and spirit” (p 267). Compare: destruction of “the free will of the alleged victims, obtaining over them mind control to the point of absolute domination” (People v Murphy, 98 Misc 2d 235, 239-240; CPL 60.45, subd 2, par [a] [definition of “involuntarily made”]; Penal Law, § 135.60, subd 9 [coercion in the second degree]).
Even in the case cited by defendant, Unification Church, for support in favor of such “recruitment” policies (Molko v Holy Spirit Assn. for Unification of World Christianity, No. 769-529, Cal Super Ct, Oct. 20, 1983), it was stated that “an adult who was not shown to be gravely disabled must have the personal and individual right to determine for himself or herself whether to associate with a religious group. Despite the possibility of coercive persuasion or ‘brainwashing’ the right of the individual to make such a choice is so important that it cannot be removed absent the showing of a grave disability.” Indeed, the plaintiff herein alleges in part (paragraph No. “5”) that defendant, Unification Church, at the time of such recruitment activities acted “knowing that he was at that time emotionally disturbed”.
In discussing the tort of intentional infliction of emotional distress, our courts have stated “[fjreedom from mental disturbance is a protected interest in this State and there may be recovery for the intentional infliction of emotional distress without proof of the breach of any duty other than the duty to refrain from inflicting it * * * A complaint which purports to state a cause of action for intentional infliction of emotional distress need not plead special damages, nor allege that defendant’s harmful acts were motivated solely by malice * * * It is only when the conduct complained of is of such character as to exceed all bounds usually tolerated by society or is extreme and outrageous that the law will recognize it as an actionable tort”. (James v Saltsman, 99 AD2d 797, 798.) “ ‘One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress’ ”. (Fischer v Maloney, 43 NY2d 553, 557; emphasis added.) While the complaint does not allege the talismanic words “severe emotional *1067 distress”, it does allege that defendant’s alleged actions caused the decedent, Meroni, to suffer “an emotional breakdown” which this court deems the equivalent of such terminology.
That one performs a tort or commits a crime in the furtherance of a “religious” activity or as part of a religious belief does not confer immunity upon such alleged wrongdoer. The constitutional guarantees of freedom of religion “[embodies] two concepts, — freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society.” (Cantwell v Connecticut, 310 US 296, 303-304.) “[T]he very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interest.” (Wisconsin v Yoder, 406 US 205, 215-216; cf. Turner v Unification Church, 473 F Supp 367, 371.)
This court does not make a determination in any sense as to the underlying beliefs or faith of the Unification Church; however, for the purposes of this motion, merely indicates that the alleged recruitment policies and actions of defendant as claimed by plaintiff insofar as it is alleged the church knew the decedent, Meroni, was emotionally disturbed and thereafter subjected him to a process of “brainwashing” which resulted in an emotional breakdown on decedent, Meroni’s behalf, does state a cause of action under our law. Whether or not under the instant facts as alleged plaintiff will be successful on such matter is another decision which should await the development of testimony at trial.
The motion to dismiss the plaintiff’s first cause of action is denied and the court having found that a sufficient alleged tort of intentional infliction of emotional distress has been alleged, the motion to dismiss the fourth cause of action is denied as well (see discussion, supra).
The motion by defendant to dismiss plaintiff’s second cause of action, i.e., that of wrongful death under EPTL 11-3.3 is denied. (See EPTL 11-3.3, subd [b]; see, also, EPTL 5-4.1 et seq.)
*1068 Defendant belatedly raises the issue of whether or not plaintiff’s representative has received ancillary letters of administration to prosecute this matter in this State. Such is a requirement under EPTL 13-3.5 (and not EPTL 11-3.2, 11-3.3 as defendant alleges). This suit was commenced almost five years ago and to the extent that defendant claims such letters ancillary should have been issued especially as against plaintiff’s first cause of action which he denominates a “survival” cause, the EPTL does not provide for dismissal of such action but rather, a stay of same for defendant’s answer time. Accordingly, to the extent defendant seeks to dismiss the cause of action based upon this section of the EPTL, such is denied. However, any and all further matters in this action are stayed for a period of 60 days during which time plaintiff’s administrator shall apply for ancillary letters of administration in the State of New York pursuant to EPTL 13-3.5 et seq.