(123 So. 237)

**DOSS v. STATE.** (6 Div. 302.)

Court of Appeals of Alabama. April 16, 1929.

Rehearing Denied May 7, 1929.

Horace C. Wilkinson, of Birmingham, for appellant.

Charlie C. McCall, Atty. Gen., and Thomas E. Knight, Jr., Asst. Atty. Gen., for the State.

BRICKEN, P. J. This appellant was indicted, tried, and convicted in the court below for the offense prescribed and denounced under section 3189 of the Code of 1923. This section bears the title "Kidnapping." It reads as follows:

"Any person who forcibly or unlawfully confines, inveigles, or entices away another, with the intent to cause him to be secretly confined, or imprisoned against his will, or to be sent out of the state against his will, must, on conviction, be imprisoned in the penitentiary for not less than two nor more than ten years."

Before entering upon the trial and at the proper time, the defendant (appellant) filed a sworn plea in abatement to the indictment, alleging, in substance, that the grand jury that returned the indictment was not drawn and impaneled as required by law, but was "stacked"; that the cards containing the

names of the jurors in attendance on that week were not placed in a hat or box by the circuit judge and indiscriminately drawn therefrom, but, to the contrary, the names of the jurors attending court that week, from which the grand jury was drawn that returned the indictment, were all stacked up in one stack and the first 18 names on the stack were "selected," by the judge presiding, as the grand jury that returned the indictment in this case.

The state demurred to this plea on three grounds: "(1) Because the plea is no answer to the indictment; (2) because the plea presents no valid objection to the indictment; (3) because the plea does not aver that the grand jury was not drawn by officers required by law to draw same." The demurrer was sustained, and that action of the court is here urged as error.

There are several statutes in this state bearing on this question: Section 5202, Code 1923, under the head of "Pleading and Practice." Section 8630, Code 1923, under the heading "Jurors and Juries." Also two other statutes under this heading which have a bearing on the question under review: Sections 8636 and 8637, Code 1923.

Section 8616 of the Code regulates the drawing of the names from the jury box for venire sufficient for a grand jury for the session of court and petit juries for the first week of the session. This section specifically provides that in such drawing "there shall be no selection of names," and that a name once drawn from the box shall not be returned thereto.

After the venire is drawn from the jury box and the jurors report to court in response to its summons, the impaneling and organization of the grand and petit juries are regulated by section 8622 of the Code of 1923. The pertinent portion thereof reads as follows: "*Hearing of Excuses; Impaneling and Organizing Grand and Petit Juries.*—The court shall require all persons named in the venire to be called, and shall then hear all excuses and claims of exemptions and disqualifications, and after passing upon all of the excuses or claims, *shall cause the names of all the jurors in attendance upon the court on that day*, and who have not been excused by the court, *to be written on separate slips of paper, or cards and placed in a hat or box, and thereupon the judge of the court must, in open court, draw from the hat or box, at terms requiring grand juries, the names of eighteen jurors who shall be impaneled and sworn as the grand jury for the term of the court.*"

Correctly stated, the points of decision here presented for review in this connection, are: (1) Can a circuit judge in this state lawfully "pick" or select the members of the grand jury from the venire in attendance upon court, or must he draw the names of the persons who are to compose a grand jury indiscriminately from a hat or box? (2) If it is illegal for the circuit judge to "pick" or select the members of the grand jury, and he does so notwithstanding (as the sworn plea avers, and the demurrer for the purpose in hand admits), can that action be inquired into by a plea in abatement?

1. Taking into consideration the express provision in section 8616, Code 1923, that "there shall be no selection of names" in the drawing of the venire from which the grand jury is to be impaneled and the prohibition against returning a name drawn, as also explicit provisions in section 8622, supra, in reference to placing the names on separate slips of paper or cards, and the requirement that the judge *shall* place or cause those names to be placed in a hat or box, "thereupon the judge of the court *must*, in open court, *draw from the hat or box* * * * the names of 18 jurors who shall be impaneled and sworn as the grand jury for the term of the court," we are of the opinion, and so hold, that it is illegal for a cuicuit judge to "pick" or select a grand jury by a manipulation of the cards or slips containing the names of the entire venire to meet "the caprice or prejudice of the judge," or for any other reason. The remarks of that illustrious jurist, Mr. Justice, afterwards Chief Justice, Brickell, in O'Byrnes v. State, 51 Ala. 25, 29, are in point here:

"The object of the statutes cannot be mistaken. If the power ever existed in any court, which the court in this case exerted, it was intended to withdraw it. Such a power is so irresponsible,—so capable of being used to impair the sanctity and purity of the grand jury,—that the legislature have, in effect, denied its existence. If the court could legally set aside the venire drawn and summoned by the officers having authority to draw and summon it, the power is unlimited. The jurors summoned under its order could be set aside in the exercise of the same power, and so from time to time, until a jury was organized to meet the caprice or prejudice of the judge. The practical results of the operation of the action of the court are opposed to the spirit of all our laws."

So say we here. If the court could legally disregard the hat or box and select any 18 names he saw fit to select, then the power of the court would be practically unlimited and the specific provisions of the statute meaningless. We conclude the court was without power to pick or select a grand jury in the way and manner stated in the plea.

2. The question recurs: Can action of that kind be inquired into by plea in abatement?

In Rodgers v. State, 144 Ala. 32, 40 So. 572, it was decided that section 5269 of the 1896 Code (now section 5202 of 1923 Code) was

"an absolute limitation of the subject named in the statute [i. e. that the jurors were not drawn in the presence of the officers designated by law] as the only cause which can be assigned in such cases."

In Zininam v. State, 186 Ala. 9, 65 So. 56, in speaking of section 29 of the 1909 Jury Law, which is now codified as section 8636 of the Code 1923, the Supreme Court, through Mr. Justice Sayre, said:

" 'It is hereby expressly declared to be the intent of the Legislature in the enactment of this law, to make the provisions hereof in the relation to the selection, drawing, summoning or impaneling of jurors directory merely and not mandatory.' Nevertheless it is clear on inescapable grounds that some of the provisions of the act in respect to the selection, drawing, summoning, and impaneling juries are mandatory. The power of the Legislature to prescribe the interpretation of its own language cannot be doubted. But it has been often noted that interpretation clauses in statutes embarrass rather than assist the courts in their decisions, * * * and that has been found to be the case with the act in question. When the Legislature in this act, along with its general prescription for interpretation, provided specific regulations, which must have been deemed essential to the proper conduct of trials by jury, and which, if they are to have any operation at all, must be made effectual according to the specific language of the act, it so provided that either such specific regulations must be accepted by the courts as mandatory, or the statute as to them must be held to be insensible and of no effect. To illustrate: The act provides that the venire for the trial of a capital felony shall consist of not less than 50 nor more than 100 persons. It could not be held that the judge may fix the venire at any number he pleases less than 50 or more than 100. Or, again: The act provides that from the list of qualified jurors appearing for service the solicitor for the state and the defendant shall strike 1 and 2 names, respectively, and alternately until the list is reduced to a jury of 12. It would be without the power of the trial judge to substitute a different procedure. So this court, following the only course open to it, has held that part of the statute mandatory which requires that a list of the names of all jurors summoned for the trial shall be served upon the defendant. Edgar v. State, 183 Ala. 36, 62 So. 800."

Section 7572 of the Code 1907 appears to have been codified twice in the Code of 1923, once as section 5202 and again as section 8630. Section 29 of the 1909 Jury Law is brought forward as section 8636 of the Code 1923.

Section 5269, Code 1896, now section 5202 of the Code of 1923, was construed in Tucker v. State, 152 Ala. 1, 44 So. 587, as not relieving the officers designated of the duty of drawing grand jurors from the box which they are required to prepare. Tyson, C. J., speaking for the court, said: "The exception in the statute above italicised does not relieve the officers designated of the duty of drawing grand jurors from the box which they are required to prepare. Code 1896, Secs. 4982 et seq., 4989. They cannot make up the venire which is to compose the grand jury in any other mode; and, if they do so, advantage may be taken of it by plea in abatement, as was done in this case. Cochran v. State, 89 Ala. 40, 8 So. 78. To allow the officers charged with this duty to select the grand jury in any other mode would not only violate the plain mandate of the statutes, but would open the way for the evils which it was manifestly their purpose to prevent. It was, therefore, error for the court to refuse to allow defendant to prove that the grand jurors were not drawn from the box at all, and the like, in support of his plea."

In Osborn v. State, 154 Ala. 44, 45 So. 666, it was decided that the curative effect of section 5269 of the Code 1896, now section 5202 of the Code 1923, would not save an indictment returned by a grand jury that had been illegally increased in number. These statutes as readopted, under well-settled rules of statutory construction, carry with them the construction referred to.

If the selection of a grand jury in the way and manner indicated in the plea is unlawful, and we hold that it is, then a construction of the statute as forbidding an objection to such procedure might raise a serious constitutional question. People v. Petrea, 92 N. Y. 128; In re Wood, 140 U. S. 278, 288, 11 S. Ct. 738, 35 L. Ed. 505. We are therefore of the opinion that the demurrer was erroneously sustained to the plea in abatement. Hafley v. State, 8 Ala. App. 378, 62 So. 319; Osborn v. State, supra; O'Byrnes v. State, 51 Ala. 25; Finley v. State, 61 Ala. 201; Tucker v. State, 152 Ala. 1, 44 So. 587; Nordan v. State, 143 Ala. 13, 39 So. 406; Fryer v. State, 146 Ala. 4, 41 So. 172.

▮▮ The indictment in this case was returned under section 3189 of the Code of 1923, which reads as follows: "Any person who forcibly or unlawfully confines, inveigles, or entices away another, with the intent to cause him to be secretly confined, or imprisoned against his will, or to be sent out of the state against his will, must, on conviction, be imprisoned in the penitentiary for not less than two nor more than ten years."

Omitting the formal parts, the counts in the indictment read as follows:

"Count 1. The grand jury of said county charges that before the finding of this indictment Eugene Doss unlawfully or forcibly inveigled, enticed, or confined Jeff Calloway, with intent to cause the said Jeff Calloway to be imprisoned against his will, contrary to law.

"Count 2. The grand jury of said county further charges that before the finding of this indictment Eugene Doss forcibly or unlawfully confined, inveigled, or enticed away Jeff Calloway with the intent to cause said Jeff Calloway to be secretly confined, or imprisoned against his will, or to be sent out of the state against his will, contrary to law.

"Count 3. The grand jury of said county further charges that before the finding of this indictment Eugene Doss whose name is to the grand jury otherwise unknown, unlawfully or forcibly inveigled, enticed or confined Jeff Calloway with intent to cause him to be secretly confined or imprisoned against his will, contrary to law, and against the peace and dignity of the state of Alabama."

The jury returned a verdict finding appellant guilty as charged in count 1 of the indictment.

The first statute in this state relating to kidnapping appears in Clay's Digest, § 24, pp. 415, 416, and reads as follows: "Every person, who shall forcibly confine or imprison, or shall inveigle or kidnap any free person within this state, against his or her will, or shall forcibly cause any free person to be confined, or imprisoned in this state, against his or her will, with intent to remove such person without the limits of this state, without lawful authority for such removal, upon conviction thereof, shall be punished by imprisonment in the penitentiary for a term not less than three, nor more than ten years."

In the Code of 1852, the statute (section 3101) read as follows: "Sec. 3101. Every person who unlawfully, or forcibly, confines, inveigles, or entices any free person, with intent either, first, to cause such person to be secretly confined, or imprisoned in this state against his will; or, second, to cause such person to be sent out of this state against his will; or with the intent to sell such person for a slave; is guilty of kidnapping, and, on conviction, must be imprisoned in the penitentiary, not less than three or more than ten years."

In the Code of 1867 (section 3689) the following language was used: "Sec. 3689. (146) *Kidnapping.*—Any person who, forcibly, or unlawfully, confines another, or inveigles or entices away another, with the intent to cause him to be secretly confined, or imprisoned against his will, or to be sent out of the state against his will, or to be sold elsewhere into slavery, must on conviction be imprisoned in the penitentiary, or sentenced to hard labor for the county, for not less than two, nor more than ten years."

In the Code of 1876 (section 4323) the law was thus expressed: "Sec. 4323. *Kidnapping.*—Any person who, forcibly, or unlawfully, confines another, or inveigles or entices away another, with the intent to cause him to be secretly confined, or imprisoned against his will, or to be sent out of the state against his will, or to be sold elsewhere into slavery, must, on conviction, be imprisoned in the penitentiary, or sentenced to hard labor for the county, not less than two, nor more than ten years."

In the Code of 1886 (section 3746), the language adopted was: "Sec. 3746. *Kidnapping.*—Any person, who forcibly or unlawfully confines, inveigles, or entices away another, with the intent to cause him to be secretly confined or imprisoned against his will, or to be sent out of the state against his will, must, on conviction, be imprisoned in the penitentiary for not less than two, nor more than ten years."

That section has been brought forward in succeeding Codes without change.

We have thus traced the history of our present statute in order to summon the records of the past to our aid in construing the present statute.

Kidnapping at common law was the forcibly abduction or stealing and carrying away of a person from his own country into another, and was regarded as the most aggravated species of false imprisonment. The offense was classified as a misdemeanor at common law. 35 C. J. 903, § 1. The same authority says: "It is an essential element of the offense that the taking or detention of the person who is the subject thereof shall be without lawful authority, and if the custody or possession of the person claimed to have been kidnapped is lawful, there is no kidnapping." See, also, 8 R. C. L. 269, § 319; 35 C. J. 903, § 4.

An analysis of the statute discloses that it purports to penalize as a felony the following acts:

(a) The forcible confinement of another, with the intent to cause him to be *secretly confined* against his will.

(b) The *forcible* confinement of another, *with the intent to cause him to be imprisoned against his will.*

(c) The *forcible* confinement of another with the intent *to cause him to be sent out of the state against his will.*

(d) The unlawful confinement of another with the intent to cause him to be secretly confined against his will.

(e) The *unlawful confinement* of another, *with the intent to cause him to be imprisoned* against his will.

(f) The unlawful confinement of another, with the intent to cause him to be sent out of the state against his will.

(h) The inveiglement of another, with the intent to cause him to be secretly confined *against his will.*

(i) The inveiglement of another, with the intent to cause him to be imprisoned against his will.

(j) The inveiglement of another, with the intent to cause him to be sent out of the state against his will.

(k) The enticing *away* of another, with the intent to cause him to be secretly confined against his will.

(l) The enticing *away* of another *with the intent to cause him to be imprisoned* against his will.

(m) The enticing *away* of another, with the intent to cause him to be sent out of the state against his will.

Appellant insists that the Legislature never intended to make the mere forcible confinement of another, with the intent to cause him to be imprisoned against his will, alternative (b), a felony, for if that be the case, claims the appellant, every school teacher who keeps a recalcitrant pupil in after school, and every parent or guardian who compels a child to stand in the corner, is technically guilty of kidnapping.

Appellant also claims that "the forcible (but not unlawful) confinement of another, with the intent to cause him to be sent out of the state against his will, alternative (c), as distinguished from being unlawfully sent out of the state against his will," is not believed to be a felony by parents, sheriffs, and guardians of other states who pursue their wayward children, prisoners, and charges into this state and forcibly confine them after apprehension here with the intent and for the express purpose of returning them to the place without the state from whence they came. Reference is also made to the supposed case of an officer arresting one under void process, as being guilty of kidnapping under alternative (e) as having unlawfully confined another with the intent to cause him to be imprisoned, as distinguished from "unlawfully imprisoned" against his will.

Appellant also contends that the Legislature had no idea of making it a felony to inveigle or entice away another with the intent to cause him to be imprisoned, as distinguished from "unlawfully" imprisoned, against his will, alternative (i) and (m), as that would make the captor of a criminal or insane person by stratagem guilty of kidnapping.

Without attempting to discuss or answer all the suggestions of appellant, we are clear to the conclusion that the "confinement" aimed at in the statute was a *forcible and unlawful* confinement, and that the "imprisonment" aimed at was an unlawful imprisonment, and that an indictment for this offense should so charge. We do not think the Legislature intended to make a simple false imprisonment (alternative b and e) a felony in Alabama, punishable by imprisonment of from two to ten years. Dominguez v. State, 90 Tex. Cr. R. 92, 234 S. W. 79, 18 A. L. R. 503. As was said by the Supreme Court of

Wisconsin in Smith v. State, 63 Wis. 453, 463, 23 N. W. 879–884: "If the Legislature intended so severe a punishment as one year's imprisonment in the state prison for simple false imprisonment, however extenuating the circumstances, such intention should have been clearly expressed, and it should be generally known by officers and others who make or aid in making arrests."

This statute, like all criminal statutes, must be strictly construed. We have no reason to suppose that it was intended to embrace within the definition of the crime acts before innocent. People v. Camp, 139 N. Y. 87, 34 N. E. 755.

"In its elementary sense the word 'or' is a disjunctive particle that marks an alternative, generally corresponding to 'either,' as 'either this or that;' a connective that marks an alternative. 29 Cyc. 1502. It often connects a series of words or propositions, presenting a choice of either. Webster's New Int. Dict. (1925 Ed.). There are, of course, familiar instances in which the conjunction 'or' is held equivalent in meaning to the copulative conjunction 'and,' and such meaning is often given 'or' in order to effectuate the intention of the parties to a written instrument or of the Legislature in enacting a statute, when it is clear that the word 'or' is used in a copulative, and not in a disjunctive, sense." Pompano Horse Club v. State, 93 Fla. 415, 111 So. 801, 52 A. L. R. 51.

No less an authority than the Supreme Court of the United States has declared: "In the construction of statutes it is the duty of the court to ascertain the clear intention of the Legislature. In order to do this the courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.'" United States v. Fisk, 70 U. S. (3 Wall.) 445, 18 L. Ed. 243. See also: State v. Brandt, 41 Iowa, 593, 606; Rolland v. Com., 82 Pa. 306, 22 Am. Rep. 758. U. S. v. Moore (D. C.) 104 F. 78; State v. Custer, 65 N. C. 339–342, and 46 C. J. p. 1127, § 7, note 55, where numerous authorities are cited.

We therefore conclude that the legislative intent was to punish the forcible *and* unlawful confinement of another, with the intent to cause him to be secretly confined against his will, in the first instance, or with the intent to cause him to be secretly imprisoned against his will, or with the intent to cause him to be sent out of the state against his will. People v. Camp, supra.

It is now incumbent upon us to examine the indictment, the sufficiency of which was challenged in every conceivable way by more than 80 grounds of demurrer. The indictment is substantially in the form prescribed by the Code of 1923, form 68, p. 488, vol. 2.

When offenses are charged in the alternative, each alternative must state a complete offense under the law, and a failure so

to do renders the entire count defective. Griffin v. State, 22 Ala. App. 369, 115 So. 769.

 As a general rule, the form of indictments to be found in the Code is sufficient, but an indictment that follows the Code form is insufficient, if the form itself is lacking in a matter of substance. Henry v. State, 33 Ala. 389, Bryan v. State, 45 Ala. 86. The Legislature cannot make that an indictment which fails to accuse of crime, and it is purely a judicial question as to whether certain language does in fact accuse of crime. The courts universally recognize the rule *that where statutory language may include innocent acts*, it is not sufficient to charge an offense in the language of the statute alone, where by its generality it may embrace acts which it is not the intent of the statute to punish. Such facts must be alleged that, if proved, the defendant cannot be innocent. Bell v. State, 16 Ala. App. 100, 75 So. 648; 31 C. J. 713, § 265; U. S. v. Metzdorf (D. C.) 252 F. 933; Martin v. U. S. (C. C. A.) 168 F. 198.

 If a material or essential ingredient of the offense is not comprehended in the statutory definition of the crime, that omitted element must be properly pleaded in order for the indictment to survive the challenge of an apt demurrer. Grattan v. State, 71 Ala. 344; 31 C. J. 710, § 260, note 35, and authorities.

 A comparison of the form in the Code with the statute discloses that the form purports to make the confinement of another, with either of the three enumerated intents, a felony. The statute was designed to punish the *forcible* and *unlawful* confinement of another with either of those intents. The form makes the mere confinement with either of those intents a felony. "Unlawfully or forcibly" preceding the word "inveigled" does not qualify the word "confined." Abercrombie v. State, 8 Ala. App. 326, 62 So. 966. The form refers to an unlawful or forcible inveiglement; the statute to an inveiglement. The averment in the indictment that the appellant "forcibly inveigled" Jeff Calloway is repugnant on its face. There is no such thing known to the law. State v. Rivers, 84 Vt. 154, 78 A. 786; People v. DeLeon, 109 N. Y. 226, 16 N. E. 46, 4 Am. St. Rep. 444; 2 Words and Phrases, Second Series, "Inveigle," p. 1185. The indictment charges that appellant "enticed" Jeff Calloway with the enumerated intent. The statute does not purport to punish one for having "enticed" another, but its condemnation is on the person who "entices away" another with the intent defined by statute. The courts of this state recognize a distinction between "entice" and "enticing away." Under a statute making it illegal to inveigle, steal, carry, or "entice away" a slave, the Supreme Court said, to constitute the offense of enticing away, there must be more than a mere unexecuted intention or

wish, to remove; "some act of removal, pursuant to such intent or wish, must be done." Martin v. State, 39 Ala. 523. It would be no answer to the charge contained in this alternative of the indictment that Jeff Calloway never left the scene of the alleged enticement. In fact, under this alternative the state was relieved of any such burden, while under the statute it carried that burden. Although, as stated, the form in the Code was substantially followed, we have said enough to indicate why we are of the opinion that the first count of the indictment was defective and the prejudicial and reversible error was committed in overruling the appellant's demurrer pointing out these and other defects. Sellers v. State, 7 Ala. App. 78, 61 So. 485; Abercrombie v. State, 8 Ala. App. 326, 62 So. 966.

 In the state's brief, it is said: "It must be borne in mind by this court that the words 'contrary to law' used in count 1 of the indictment were used to charge that the confinement was unlawful, the inveiglement was unlawful, the enticement was unlawful."

We do not accord to this insistence. The words may have been used for that purpose, but the authorities do not ascribe that office or effect to them.

"It is a general rule in indictments upon statutes, that, unless the statute be recited, neither the words contra form a statute, nor any intendment or conclusion, will make good an indictment which does not bring the fact prohibited or commanded, in the doing or not doing whereof the offense consists, within all the material words of the statute." Com. v. Morse, 2 Mass. 128; State v. Stroud, 99 Iowa, 16, 68 N. W. 450.

"It is not the office of the words 'contrary to the statute in such cases made and provided' to supply averments of facts in an indictment. * * * The statement means that the offense charged is a statutory one. It in no sense supplies omitted facts." State v. Stroud, supra.

It was the state's theory in this case, and its evidence tended to show, that appellant and one Glaze, one Davis, and a number of others, who were named, were members of a band of masked and robed men, members of the Tarrant City Klan, that took Calloway into custody and flogged him. Some of the witnesses for the state testified in substance that Glaze and Davis rode in L. A. Clayton's car to the scene of the flogging, along with the other members of the whipping party, and that these two men participated in the flogging, along with the others. The Mr. Glaze in question was examined as a witness by the state. He denied leaving the church in the Clayton car, and denied any knowledge of or connection with the flogging. Glaze testified that he left the church with Mr. Ira Davis in his car, and that they went directly home, and he denied all connection on the part of

himself and Davis with the flogging of Calloway.

The state's theory that Glaze, Davis, appellant, and others conspired to take Calloway to the woods to whip him, and that in pursuance of that conspiracy they, acting in concert, did take him to the woods and whip him. Glaze contradicts that theory and the evidence tending to sustain it. He denies that he conspired with appellant or any one else, and he affirms that neither he nor Davis in any wise participated in what occurred the night Calloway was flogged.

The scintilla rule prevails in this state. The jury could have drawn an adverse inference to the state's position in this case from witness Glaze's testimony, and the court below erroneously invaded the province of the jury by giving the general affirmative charge with the hypothesis in writing by the state. Bonner v. State, 8 Ala. App. 236, 62 So. 337; Nichols v. State, 4 Ala. App. 115, 58 So. 681.

The appellant also vigorously insists that, as to the charge of kidnapping, he was entitled to the general affirmative charge under all the evidence adduced upon the trial of this case. A recital of facts, sufficient to illustrate the legal point of decision involved, may be summarized as follows: Calloway was wrongfully seized at a public place, to wit, Antioch Church in Blount county, in the presence of a large concourse of people, by a band of men in the masks and robes of the Ku Klux Klan. No effort appears to have been made to conceal the fact that Calloway was taken into custody. The circumstances indicated that this band of men intended that it should be generally known that Calloway was taken in charge. There was no secrecy, unless the concealment of the identity of the members of the band of men be termed secrecy. The evidence clearly negatives any idea of a conspiracy on the part of the Klansmen to violate any law, prior to Calloway's appearance on the church grounds, in the possession of prohibited liquors and under the influence of liquor. It is not shown that any member of this party ever saw or heard of Calloway prior to his appearance there in that condition. The Oneonta and Tarrant City Klans had been invited to attend religious worship at this church, which at the time of the occurrence complained of was being conducted, and large numbers, some 75 or more, robed and masked in the regalia of the order, were there in response to that invitation. Some of the members participated in the religious services. A part of this band of men, some nine or ten in number, took Calloway into custody, because of his misconduct above stated, with the announced intention of carrying him to the sheriff of the county, at Oneonta. Calloway was carried along the public road in an automobile followed by other motor vehicles operated by persons who

had no connection with the Klan. The car Calloway was in did not stop at Oneonta, according to the testimony. The persons having Calloway in charge outdistanced these other cars and ran into Jefferson county and carried Calloway off the main highway into the woods and flogged him. When the flogging was over, Calloway was ordered to run, and he immediately left without let or hindrance. No effort was made to apprehend him or keep him in custody after the flogging, or to keep him from disclosing that he had been flogged. The maximum shown by the record is that this band of men took Calloway in charge, because of his misconduct at or near the church, with the announced purpose of taking him to the sheriff, but, instead of so doing, took him to the woods in Jefferson county and gave him a flogging and turned him loose. The material question is, Does this constitute kidnapping as that offense is defined by our statute?

If the appellant was guilty of kidnapping, assuming the facts disclosed by the records to be true, it must be because these facts show that he either (1) forcibly and unlawfully confined Calloway with the intent to cause him to be unlawfully confined or unlawfully imprisoned against his will, or (2) aided or abetted others in so doing. The evidence negatives any idea of inveiglement or enticing or any intent to secretly confine Calloway, or to cause him to be sent out of the state against his will.

To confine is to restrain within limits. Black's Law Dict. p. 243; 12 C. J. 422. Any intentional conduct chargeable to appellant that resulted in placing Calloway in a position where he could not exercise his will or go anywhere he might lawfully go constituted imprisonment of Calloway by appellant in the eyes of the law. Robinson & Co. v. Greene, 148 Ala. 434, 43 So. 797; 2 Words and Phrases, Second Series, 971.

We are of the opinion that the Legislature did not intend to impose this severe punishment prescribed by our statute for false imprisonment alone, and in our opinion that is all the record shows this appellant was guilty of, if he was guilty of anything other than assault and battery, if all the evidence offered by the state be true. Several reasons suggest themselves to us as sustaining this conclusion:

(1) False imprisonment was indictable as a specific crime at common law. 19 Cyc. 376.

(2) In addition to the common-law offense, which still prevails in Alabama, the state has enacted several statutes to protect its citizens. Among these are:

Sections 4938, 4939, 5439, and 5440 of the Code of 1923, reading as follows:

"Sec. 4938. *Abusing or Beating Accused Person, or Lynching.*—Any two or more persons who abuse, whip, or beat any person, up-

on any accusation, real or pretended, to force such person to confess himself guilty of any offense, or to make any disclosures, or to consent to leave the neighborhood, county, or state, must, on conviction, each be fined not less than five hundred dollars, and may be imprisoned in the county jail, or sentenced to hard labor for the county for not more than twelve months.

"Sec. 4939. *Lynching; Mob Defined.*—Any number of persons assembled for any unlawful purpose and intending to injure any person by violence and without authority of law shall be regarded as a mob, and any act of violence exercised by such mob upon the body of any person shall, when such act results in the death of the injured person, constitute the crime of lynching; and any person who participates in or actively aids or abets such lynching shall, on conviction, suffer death or be imprisoned in the penitentiary not less than five years, at the discretion of the jury, and any person, who being a member of any such mob and present at any such lynching, shall not actively participate in the lynching, shall be deemed guilty of abetting such lynching; and, on conviction, shall be imprisoned in the penitentiary not less than one year nor more than twenty-one years, at the discretion of the jury."

"Sec. 5439. *Unlawful Assemblies.*—If two or more persons meet together to commit a breach of the peace, or to do any other unlawful act, each of them must, on conviction, be punished, at the discretion of the jury, by fine and imprisonment in the county jail, or hard labor for the county, for not more than six months."

"Sec. 5440. *Rout.*—If three or more persons shall meet together to do an unlawful act upon a common cause, and shall make advances toward the commission thereof, they shall be deemed guilty of a riot (rout), and, on conviction, shall be punished as provided in the preceding section."

In Perkins v. State, 250 P. 544, 49 A. L. R. 1129, the Supreme Court of Oklahoma was called upon to pass upon a similar case, and in holding such conduct to be a riot, that court said:

"Riot at common law, and under provisions of sections 2006 and 2008, Comp. St. 1921, is a compound offense, including some of the essential elements of a criminal conspiracy, involving the execution of an agreement, express or implied, between three or more persons to commit an assault or a battery or a breach of the peace. The rules of evidence tending to establish concerted action and the identity of the parties participating should be the same as in a criminal conspiracy.

"Instruction No. 3A, given by the court and excepted to by the defendants, reads as follows: 'Therefore, bearing in mind these instructions and applying the same to the evidence before you, should you find from the evidence beyond a reasonable doubt, that in Jackson County, Okla., on or about the 23d day of April, 1923, the defendants, D. J. Tays and Robert Perkins did then and there, while acting in a body of three or more persons, without authority of law, feloniously combine together, acting in concert, and in pursuance of a common design and intent by means of force and violence, and carried at the time any firearms or other dangerous or deadly weapons, or were disguised by means of masks or otherwise, seize the prosecuting witness, Robert Kimbell, against his will and by the means just stated, and while so acting together in a body composed of three or more, did whip and beat the said Robert Kimbell, with a certain strap or lash, thereby inflicting serious bodily injury upon the said Robert Kimbell, it will be your duty to find the defendants, or such of them as you believe beyond a reasonable doubt, advised, aided, abetted or participated in committing the offense, if the number so committing such offense amounted to three or more, guilty as charged in the information, [which was the crime of riot] and unless you find these several averments to be true, beyond a reasonable doubt, your verdict should be not guilty.'

"The defendants complain that this instruction, in effect admonished the jury that if Perkins and Tays were in the crowd there assembled on the highway, and that if they, as members of this crowd, seized Kimbell and whipped him, their guilt was established. In other words, that it was not necessary to show that these two were acting in concert with the others. Concerted action need not be shown by specific declarations; frequently, the manner of showing concerted action is by circumstantial evidence; and the fact that they were members of an unlawful assembly, clad in masks and regalia that made identification difficult, under circumstances indicating that they were assembled for an unlawful purpose, justified the giving of this instruction."

A riot at common law existed where three or more persons having a common intent acted together to accomplish some purpose by force or violence. Authorities noted, 49 A. L. R. 1135.

The kidnapping statute of the state of New York, construed by the lower court in People v. Camp, 66 Hun, 531, 21 N. Y. S. 741, and affirmed by the Court of Appeals of New York in 139 N. Y. 87, 34 N. E. 755, is in many respects analogous to the Alabama statute. In construing this statute the lower court of New York court said: "In order to sustain a conviction under the statute, there must be made to appear, besides the actual unwilling detention or imprisonment, two things: First. The seizure and confinement must be shown to have been, in the words of the statute, 'without authority of law.' * * * Secondly.

The imprisonment or confinement must be shown to have been done 'secretly.' The phrase of the statute is, 'to be secretly confined or imprisoned within the state.'"

On appeal the matter was treated at length by the Court of Appeals in .34 N. E. supra, and in the course of its discussion the Court of Appeals said:

"The Revised Statutes defined the crime of kidnapping as follows: 'Every person who shall without lawful authority forcibly seize and confine any other, or who shall inveigle or kidnap any other with intent either (1) to cause such other person to be secretly confined or imprisoned in this state against his will; or (2) to cause such other person to be sent out of this state against his will.' 2 Rec. St. p. 664, § 28. And this section of the Revised Statutes, consisting of three subdivisions, was carried into the Penal Code, and is there subdivision 1 of Section 211, as follows: 'A person who willfully seizes, confines, inveigles or kidnaps another with intent to cause him, without authority of law, to be secretly confined or imprisoned within this State, or to be sent out of the State, or to be sold as a slave, or in any way held to service, or kept or detained against his will,' is guilty of kidnapping. The Code provision was a mere revision of the provisions contained in the Revised Statutes, and we have no reason to suppose that it was intended to embrace within the definition of the crime acts before .inno-·cent. When the person *seized or inveigled is not removed from the state, the intent must be secret confinement within the state.* When the person is seized and removed in broad ·daylight, over public highways and railroads, in the presence and view of many people, and taken to a public asylum, where there are ·public officials, numerous physicians, and other people, there certainly is no secrecy about the transaction, and it bears no resemblance to what has always been understood to be kidnapping. *In such a case there may be an assault and false imprisonment,* but not the crime here charged. Such a person has the ·protection of our laws, and ample remedies against the wrongdoer, and the writ of habeas ·corpus is always available for his release. *Suppose a public officer, without authority of law, publicly seizes a person in the street, and takes him to the police station or jail.* Is he guilty of kidnapping? Suppose the defendant, inflamed by undue religious zeal, had taken his daughter by force, and carried her to some church, and compelled her to sit in a pew by his side during religious services. Would he have been guilty of this crime? These questions must obviously be answered in the negative, and unless they can be answered in the affirmative the defendant's conviction upon the facts of this case cannot be maintained. The first part of section 211 provides for all cases of kidnapping by seizure and confinement within the state. The latter part, after the words 'within this state,' relates to cases of removal of the person seized or inveigled from the state; and, if a broader meaning be given to the latter part, then the fore part is useless and unnecessary. In construing, the section, a purpose should be attributed to all the language used."

In the case of Smith v. State, 63 Wis. 453, 23 N. W. 879, the Supreme Court of Wisconsin placed a similar construction upon the Wisconsin statute, in a very able and exhaustive opinion.

(3) We also recall (and this is a matter of common knowledge) that a determined effort was made at the 1927 session of the Legislature of Alabama to make conduct of the kind here complained of and disclosed by this record a felony, and that the Legislature declined to pass a bill that was introduced which, if adopted, would have had that effect. While, of course, the interpretation of statutes by the Legislature is not binding upon this court, it is significant that the opinion was prevalent then that the kidnapping statute did not cover or did not apply to conduct of the kind disclosed by this record, and for that reason an appreciable number of the Legislature deemed it advisable to make this identical conduct a felony. The Legislature numbers among its membership many distinguished lawyers and jurists of this state, and their opinion as evidenced by said action corroborates the opinion we entertain that the evidence disclosed by this record does not show that the crime of kidnapping had been committed.

We conclude that when the state relies on a forcible and unlawful confinement, with intent to cause the party to be confined or imprisoned, the burden is on it to show that the intent was to secrete or cause the person confined to be secreted or secretly imprisoned against his will. Authorities, supra.

The appellant also insists that he was entitled to the general affirmative charge because of the legal insufficiency of the evidence offered by the state in that the testimony tending to connect the defendant with the crime consisted only of the testimony of accomplices. The principal witnesses for the state, and the only witnesses pretending to identify the accused or any other member of the whipping party, were the witnesses Tidwell and Hughes, who were members of the Tarrant City Klan; they went to the Antioch Church, on the occasion that Calloway was flogged, robed and masked like the other members of the Klan. These two witnesses voluntarily became members of the whipping party; the witness Hughes voluntarily furnished his car for transporting part of the whipping party to the scene of the flogging; these witnesses claim to have witnessed, and participated in the flogging, although, when first interrogated about it by the Attorney

General, they stoutly denied knowing anything about it or any one connected with it in any way.

The state concedes that the witness Tidwell was an accomplice, and contends that witness Hughes was not. We are unable to agree with this position. The decisions of the court and the Supreme Court of this state leave no reasonable doubt in our minds as to both Hughes and Tidwell being accomplices under the law. Alexander v. State, 20 Ala. App. 432, 102 So. 597; Boles v. State, 21 Ala. App. 356, 108 So. 350; Davidson v. State, 33 Ala. 350; Patterson v. State, 21 Ala. App. 368, 108 So. 350; Gandy v. State, 21 Ala. App. 384, 108 So. 656.

The law of this state declares that a conviction for a felony cannot be had on the testimony of an accomplice, unless the testimony of the accomplice is corroborated by other evidence tending to connect the defendant with the commission of the offense. The law further says that the corroborative evidence is insufficient as a matter of law, if it merely shows the commission of the offense or the circumstances thereof. Code 1923, § 5635.

Under our statute, we must, after eliminating the evidence of the accomplices, find some inculpatory evidence tending to connect the defendant with the offense, or the testimony of the accomplices is not corroborated as the statute requires. We have searched this record diligently for such evidence, and we have not found it. The able and extensive brief submitted by the state does not refer to or point out any such testimony.

In Marler v. State, 68 Ala. 580, one of Alabama's most distinguished jurists, Mr. Justice Somerville, speaking for the Supreme Court, said: "As was said by Lord Abinger, in Regina v. Farler, 8 C. & P. 106, 'A man who has been guilty of a crime himself will always be able to relate the facts of the case, and if the confirmation be only of the truth of that history, without identifying the persons, this is really no corroboration at all. If a man were to break open a house, and put a knife to your throat, and steal your property, it would be no corroboration that he had stated all the facts correctly; that he had described how the person did put the knife to the throat, and did steal the property; it would not at all tend to show that the party accused participated in it.' "

Following an unbroken and unquestioned line of Alabama cases, we are forced to hold that the evidence submitted by the state in this case was legally insufficient to support a conviction for the felony charged, and that the jury should have been instructed in writing, at appellant's request, to return a verdict finding him not guilty of the offense charged. Motes v. State, 20 Ala. App. 195, 101 So. 286; Tompkins v. State, 7 Ala. App. 140, 61 So. 479; Lindsay v. State, 170 Ala. 80, 54 So. 516; Perkins v. State, 20 Ala. App. 113, 101 So. 85; Alexander v. State, supra; People v. Morton, 139 Cal. 719, 73 P. 609.

The record in this case is voluminous, containing several hundred pages of transcript paper. We have examined it with care. There are hundreds of exceptions reserved to the court's rulings upon the evidence, as well as 220 refused written charges, as well as certain conduct and remarks of the trial court and prosecuting counsel, all urged as error. It would extend this opinion beyond all reasonable limits to attempt to treat all these questions. Many of the rulings on evidence are in conflict with elementary principles of the law of evidence. Many of the refused charges have been so repeatedly held good by the appellate courts of this state, and causes have so frequently been reversed because of their refusal, as that it is difficult to understand on what theory these charges were refused.

The case of Clayton v. State, pending in this court and growing out of the same transaction, may be termed a companion case to the one at bar. Many of the points of decision in each of these cases are identical and of the same import, and the numerous decisions in the Clayton Case upon the same questions as here presented are approved and are to be held as authority upon similar questions involved in this case and which have not been specially treated in this opinion. Clayton v. State, ante, p. 150, 123 So. 250.

For the numerous errors indicated the judgment of conviction from which this appeal was taken must perforce be reversed and the cause remanded.

Reversed and remanded.

SAMFORD, J. (concuring in conclusion). I concur in the conclusions reached by BRICKEN, P. J., in the most excellent opinion written by him, except as to his conclusion and the reasoning therefor in which he holds that the facts therein stated present a question of law for the court and not one of fact for the jury and that the facts do not constitute kidnapping, and for that reason the defendant is entitled to the general charge.

I am of the opinion that if the facts stated do present a question of law alone that, in that event the state would have been entitled to an instruction that the facts stated constitute the crime of kidnapping, and if the defendant is identified as being present, aiding or abetting, he would be guilty. I am of the opinion that in this case the question of intent is for the jury. In the Clayton Case (Ala. App.) 123 So. 250,[1] on the same state of facts, I have written my views, but, feeling sure in the position there announced, I did not cite authority or offer argument. In view of our differences I feel impelled to add: The

[1] Ante, p. 150.

*intent of secrecy* is one of the elements that distinguish the offense here charged, from that of assault and battery or whitecapping. That intent must be found by the jury and may be inferred from the facts and circumstances attending the whole transaction and the presence or absence of excusing or palliating facts or circumstances. Love v. State, 16 Ala. App. 44, 75 So. 189; Brown v. State, 142 Ala. 287, 38 So. 268; Jackson v. State, 94 Ala. 89, 10 So. 509; Meredith v. State, 60 Ala. 441; Wigmore's Ev. § 300. In this state motive and intent remain as they were at common law—inferences to be drawn from surrounding facts and circumstances. Ala. Fert. Co. v. Reynolds & Lee, 79 Ala. 497. Wherever inferences must be drawn it is the jury and not the court which must draw them. The court in instructing the jury may state legal presumptions arising from any state of facts; it cannot draw an inference of fact. Easterling v. State, 30 Ala. 46; Joseph v. Southwark F. & M. Co., 99 Ala. 47, 10 So. 327; Smith v. Collins, 94 Ala. 394, 10 So. 334; Pritchett v. Munroe, 22 Ala. 501; 38 Cyc. 1517d and 1518e. Some legal presumptions are conclusive and may not warrant inferences, based upon the rule that a person is presumed to do what he does. As in this case under the facts stated by the presiding judge there is a conclusive presumption that Calloway was unlawfully flogged. There is no room for any other inferences to be drawn from the facts. But, was it with the intent that the confinement should be secret? Or was it with the intent to commit an assault, regardless of whether it was secret or not? Or was it to force Calloway to confess where his stills were located (and there was some evidence tending to prove this)? The intent with which the defendant acted rested in inference and was for the jury. Or, to state it differently, the evidence as set out by the presiding judge, if believed beyond a reasonable doubt, constitutes kidnapping within the meaning of the law, *provided* the jury from all the facts and circumstances believe also, beyond a reasonable doubt, that the confinement was intended to be secret.

RICE, J. (concurring). I concur in the reversal of the judgment of conviction in this case, but for the sole reason that I think the trial court was in error in giving the general affirmative charge in favor of the state. Very briefly (as the necessity seems to me to impel) I will state my views:

The conviction of appellant, as I read the record, rested alone, in its last analysis, on the testimony of the two state's witnesses Hughes and Tidwell. There seems no contention, worthy of notice, that Tidwell was *not* an accomplice. In fact, the testimony shows that he *was*, beyond question.

As to the witness Hughes, I take, literally, from the excellent brief of appellant's able counsel, filed on this appeal, what the undisputed testimony in the case shows as to his complicity in the crime charged against appellant. It is, quoting from the said brief, that:

"(1) Hughes and Tidwell were each members of the Tarrant City Klan; Tidwell belonged to the Klavaliers.

"(2) Both of them voluntarily went to Antioch Church, *masked and robed*, with the other Klansmen from Tarrant City and Oneonta; Hughes drove his car; Tidwell went in L. A. Clayton's car.

"(3) Hughes voluntarily sat on the steps of the church during the service; Tidwell went into the church and sat down behind the preacher during the service.

"(4) Calloway was taken into custody at the church and placed in the L. A. Clayton car, which started to leave, and Tidwell caught the Clayton car when it was leaving the church and rode the running board. Hughes loaded up the car with the parties, including the defendant, that he carried to the church, and followed the Clayton car Calloway was in, Hughes driving, to the place in Jefferson county where Calloway was whipped. Both of them knew that the man in the Clayton car had some one in custody all the time. It was stated they were going to take him to the sheriff in Oneonta for being drunk and disorderly, but no attempt was made to stop in Oneonta.

(5) When the Clayton car stopped in Jefferson county, Hughes stopped his car some 10 or 15 feet behind it and cut off his lights. In answer to a question by some one in the Clayton car as to 'who is back there,' the response from the men in the Hughes car was: 'We have all got green capes except Hughes, *and we are not afraid of him.*' The two cars went on about a mile and stopped; when the two cars stopped, Hughes and Clayton remained with the cars, and every one else, including Tidwell, went into the woods with Calloway, where he was whipped.

"(6) Hughes claims that while the other members of the party were in the woods whipping Calloway, he voluntarily took an oath to keep the thing secret until death.

"(7) That the parties then loaded up in the two cars and started for home. Tidwell rode in Clayton's car and Hughes drove the folks in his car to Tarrant City and let them out and then drove to his home in Mt. Pinson and went to bed.

"(8) That about July 15th Hughes and Tidwell were brought before the Attorney General for examination in Birmingham, and at that time were fully sworn and each of them, under oath, denied that they had ever made the trip to Antioch Church on June 26th. They denied knowing anything about the whipping. Hughes swore that he was at his mother's; Tidwell swore that he was asleep

at Tarrant City and that he could prove it by his brother.

"(9) They continued to conceal and suppress their alleged knowledge of this occurrence and made no report of the affair to any officer until they were scared or frightened · or intimidated into telling it to the Attorney ‘General."

On these facts, the situation was, I think, similar to that that existed in the case of Horn v. State, 15 Ala. App. 213, 72 So. 768, where Judge Evans said: "Where there is doubt whether a witness is in fact an accomplice, and the testimony is susceptible of different inferences on that point, such question is for the jury, and not the Court."

By giving the general affirmative charge in favor of the state—there being no testimony corroborating, in the essential respects, that of Tidwell, other than the testimony of Hughes—the trial court, in effect, found as a matter of law that Hughes was *not* an accomplice. This since admittedly the appellant could not be convicted on the uncorroborated testimony of an accomplice (instantly, Tidwell). Code 1923, § 5635.

As above pointed out, I do not think the evidence warranted the court in taking this action, and its doing so was error that must cause the judgment of conviction to be reversed. Horn v. State, supra.

I concur in neither of the opinions prepared by my associates, except as to the result, and that, for the reason above set out. If, under proper instructions, the jury had found that Hughes was *not* an accomplice, the state, it seems to me, would have been entitled to a verdict of guilt upon the uncontradicted testimony. This would have rendered harmless practically all those matters complained of on this appeal. On such matters as to which this would *not* be true, I have this to say:

Appellant's plea in abatement was as follows:

"In the Circuit Court of Blount County, Ala.

"The State of Alabama v. Eugene Doss, Defendant.

"Comes the defendant in the above styled cause, specially and for special plea in abatement to the indictment in said cause says, that the indictment returned against him in this case should be abated because the Grand Jury that returned said indictment was not drawn and empannelled as required by law, but to the contrary was what is commonly called 'stacked,' that is to say, the cards containing the names of the Jurors in attendance on Court that week were not placed in a hat or box and the names indiscriminately drawn therefrom, but to the contrary the names of the jurors attending Court that week from which the Grand Jury was drawn which returned this indictment were all stacked up in one stack and the first eighteen names on the stack were selected by the Judge presiding as the Grand Jury empannelled which returned

the indictment in this case. Horace C. Wilkinson, J. R. McElroy, P. A. Nash and A. A. Griffith, Attorneys for Defendants.

"State of Alabama, Blount County.

"Personally appeared before, the undersigned authority in and for said county, in said State, Eugene Doss, who being duly sworn, deposes and says that the facts set out in the foregoing plea are true.

"Eugene Doss.

"Subscribed and sworn to before me this 1st day of Aug., 1927.

"P. A. Nash, Notary Public."

Alabama Code 1923, § 8630, is in the following language:

"*Objections to Indictments; How Taken.*— No objection to an indictment on any ground going to the formation of the grand jury which found the same can be taken to the indictment, except by plea in abatement to the indictment; and no objection can be taken to an indictment by plea in abatement *except upon the ground that the grand jurors who found the indictment were not drawn by the officer designated by law to draw the same;* and neither this objection, nor any other, can be taken to the formation of a special grand jury summoned by the direction of the court. (Italics ours.)

The state's demurrers to the appellant's plea in abatement, as set out in the opinion prepared by Presiding Judge BRICKEN, were sustained. I think, properly so. The plea does not set forth, in my opinion, the *only* ground of objection which by the Code section just set out is permissible. See citations following Code, § 8630, in the Code of 1923.

I am not unaware of the force of the reasoning in the opinion by the presiding judge, in this case, but I do not believe it was the intention of the Legislature in enacting the provisions of Code, section 8630, supra, to allow an objection of the sort stated in appellant's plea in abatement to be taken to an indictment apparently regularly found and returned into court by a grand jury drawn and impaneled by the officer designated by law to perform that action. It is true that Code 1923, § 8622, provides that the names of grand jurors shall be drawn from a "hat or box," and that Code 1923, § 8616, perhaps pertinent, provides that there shall be "no selection of names"; but in the appellant's plea above there is no fraud alleged, and for aught that appears it could be possible that no "hat or box" was available. I do not think the allegations set up show a "selection of names" in the sense intended by Code, § 8616, supra. At any rate, it is my opinion that the state's demurrers were properly sustained to said plea.

Count 1 of the indictment, under which (and under which alone) appellant was convicted, literally follows form No. 68 provided by section 4556 of the Code of 1923 for the offense charged.

The Supreme Court, whose decisions we are required to follow, in a case where this exact situation obtained with reference to an indictment, duly challenged, as here, by demurrer, has said: "This was sufficient, and the court did not err in overruling the demurrer to it." Code 1923, § 4527; Malloy v. State, 209 Ala. 219, 96 So. 57.

The facts shown by the undisputed testimony in the case, as summarized in the opinion prepared by BRICKEN, P. J., in my opinion, technically, at least, constituted the offense known to our law as "kidnapping." Code 1923, § 3189.