16 So.2d 425

## BROOMFIELD v. STATE.

### 4 Div. 797.

Court of Appeals of Alabama.

Jan. 18, 1944.

M. I. Jackson and R. H. Bennett, both of Clayton, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and L. H. Brassell, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The appellant was indicted by a grand jury in Barbour County, Alabama, and charged with the offense of kidnapping. The indictment contains two counts and, omitting the formal parts, reads as follows:

"The Grand Jury of said County charge that before the finding of this indictment that J. S. Broomfield alias H. J. Broomfield, whose Christian name is to the Grand Jury unknown, unlawfully or forcibly inveigled, enticed or confined Willie Rumph alias Junior Rumph, with intent to cause said Willie Rumph alias Junior Rumph to be imprisoned against his will, or to be sent out of the state against his will.

"Count 2. The Grand Jury of said County further charge that before the finding of this indictment that S. J. Broomfield alias H. J. Broomfield, whose Christian name is to the grand jury unknown, unlawfully or forcibly inveigled, enticed or confined Willie Rumph alias Junior Rumph, with intent to cause said Willie Rumph alias Junior Rumph to be imprisoned against his will against the peace and dignity of the State of Alabama."

Mary Bell Parker was called as a witness on behalf of the State. She testified: "That man, the defendant, was my husband, we were living together, he passed me off to the world as his wife and recog-

nized me as his wife and supported me as a wife. I want to testify in this case."

On the same point the defendant testified: "That wasn't my boy. (Referring to Mary Bell Parker's boy). I had been living with his mother about a year and a half; I had never exactly married her nor introduced her to anybody as my wife; the truth of the matter is, she was just cooking for me."

The appellant and Mary Bell Parker are negro tenant farmers, and having in mind their social status it is not surprising that it is uncertain whether they were legally man and wife according to the Statutes of this State. However that may be, it is clear that they occupied a relation approximating that, and that because of that situation a most unusual set of circumstances is presented by the record in this case.

It appears without contradiction or dispute that Mary Bell, whether she be a Parker or a Broomfield, had a little boy about five years of age who was called "Junior." On the occasion when it was alleged he was kidnapped by appellant, Mary Bell and the appellant had been over to Mr. Green's store, and they returned to Mary Bell's home about seven o'clock in the evening. When they came in appellant asked Junior where were the matches and Junior replied, "We struck 'em up." Appellant replied, "I'm going to whip you for it." Mary Bell then intervened and said to appellant: "Don't do that, put him (Junior) in the crib and let the booger-man get him." Appellant nevertheless struck Junior two or three licks with a strap, but at the insistence of the mother carried Junior out to a crib in the back yard and put him in the crib. Appellant says the door to the crib had a latch on it but he didn't latch it. He returned to the house where Mary Bell was and sat on the bed for a short time and said: "I'm going out there and turn him (Junior) out in a few minutes." Appellant then laid across the bed and dozed off to sleep. Appellant didn't undress before he went to sleep. Mary Bell went to sleep about the same time, and about four o'clock the next morning both of them were awakened by Junior crying. The crib was on fire and the child was burned to death. When the appellant discovered the crib was on fire he went out and endeavored to get the child out of the crib. There were some shucks and an old sack and a quilt and old pea hulls in the crib at the time the child was put in the crib. Junior made no objection to being put in the crib that night, if that has anything to do with the case. The weather was a little cool but not cold. The cause of the fire is unknown and there is no suggestion that the appellant was in any way responsible for it. Mary Bell had three other small children on the place who were there at that time. She testified that no fire was kindled in the house that night. She admitted that she knew Junior had been striking matches, and by way of punishment for his striking matches, "We put him up. I told Broomfield that would be the best thing. He hadn't mentioned putting him in the crib until I said that. We had punished him that way before by putting him up. That wasn't the first time. At the time Broomfield put him in the crib he said he wasn't going to stay in there, he was going back in a few minutes and take him out. He was just teasing him not to do that; he said that when he got back to the house, and then he laid down across the bed; he didn't put off his clothes; we both just dozed off asleep and I woke up and saw the firelight shining through the window and I jumped up and called him' and he went to the door and ran out there; he made an effort to get in the crib, he opened the door and tried to get him out but the fire was just blowing out the door and he couldn't get him; when that fire took place he was still dressed like he was when he lay down across the bed."

We have quoted some testimony of the State's witness in order to show there is no material variance between her version of what happened and the appellant's version of what occurred. The other evidence in the record does not in any way vary the material facts in the case.

We find no brief in the record on behalf of appellant. There is, however, an able brief submitted by the Attorney General in which, with commendable candor, he says: "We are mindful that we are representing the State on this appeal, however, we feel that it is our duty to call to the attention of the Court all errors that appear to us that we may be of service to the Court in arriving at the truth. We desire not to be understood as confessing error in this case, which we are not doing, but only pointing out to the Court certain discrepancies which we think appear on the record. Kidnapping is not a common occurrence in Alabama and has not been so, however, there are some cases which the Courts of Alabama have had to deal with."

The Attorney General then refers to the case of Doss v. State, 23 Ala.App. 168, 123 So. 237, certiorari denied 220 Ala. 30, 123 So. 231, 68 A.L.R. 712.

We also had the kidnapping Statute before us for consideration in Clayton v. State, 23 Ala.App. 150, 123 So. 250. What was there said is sufficient authority for our holding here that the trial court erred in not giving the general affirmative charge requested by the defendant in writing. In our judgment the undisputed evidence in this case is insufficient to show a violation of the Alabama Kidnapping Statute, Title 14, Sec. 6, Alabama Code 1940.

The conclusion reached makes it unnecessary to consider other questions raised in the record.

The judgment of conviction, from which this appeal was taken, is reversed and the cause remanded to the lower court for further orders in line with what has been here said.

Reversed and remanded.