Kidnapping; sentence, two years imprisonment.
Barry Robinson testified that on the night of February 25, 1975, he and a friend, Walter Betz, were driving home after *Page 231 
having taken their girl friends home after a date. While traveling on Tuscaloosa Avenue in Gadsden, around 11:00 P.M., Robinson saw the appellant, Lawrence Ball, Jr., standing in the middle of the street waving his arms. From the record:
 "A. I pulled over to stop and help him . . . I thought it was somebody I knew that needed some help.
* * * * * *
 "A. He came and jumped in the car and said, `Get me out of here.' I said, `Look, I don't know what you are talking about.' And he said, `Get me out of here.' `Look, I don't want to get involved in this stuff, I don't know what is happening here. What are you doing.' At this time another man came running up, J.D. Williams, with two bricks, one in each hand.
* * * * * *
"Q. Williams said he wanted the man —
 "A. He said to let him out, `Put him out, I want him.' And I said, `Look, I don't know what yall are fighting about; I don't know what is going on.'
"Q. Then what happened?
 "A. Then, Lawrence Ball said, `Get out of here or I will set you afire.' I didn't know what he was talking about. I just heard `fire,' and I looked at him. He said, `Get out of here, I will set you afire.' He poured gas on my right arm and it dripped down on my shirt. And then, he struck a match. And right as he struck the match I took off because I knew what he had said then.
 "Q. All right. Now, you are positive it was gasoline that he poured on you?
 "A. It was either gasoline or kerosene, something along those lines."
* * *
"Q. Did Williams do anything at that point?
 "A. He threw the brick through the window. As soon as I hit the gas pedal he threw the brick.
* * * * * *
 "A. I kept the gas pedal on the floor, and as we were driving off I heard another brick hit the back of the car, which is the second brick. It hit the back of my mother's car; and still has got a tear in the vinyl roof."
Robinson stated that when he stopped the car for the appellant, Betz slid over in the front seat to make room, and appellant got in the car. He said the appellant had a soft drink bottle in his hand from which he poured the gasoline. Robinson stated that he drove the car a short distance and then stated that he was going to the police station. He said the appellant offered to tell him the name of the man who threw the bricks if he would not take the appellant to the police station. Appellant told him the man's name was J.D. Williams, Jr., and when the witness stopped at a traffic light, the appellant got out of the car and left. Robinson then drove to the police station and reported the incident.
On cross-examination Robinson stated that the appellant did not attempt to throw the match on him. He stated that the appellant never told him where to drive, only to "get me out of here."
Walter Betz, Jr., testified to essentially the same details as Barry Robinson.
J.D. Williams testified that on the night in question, prior to the incident charged in the indictment, he along with the appellant and some others were playing cards at a friend's house. Williams said he dropped a $5.00 bill, and the appellant picked it up and did not return it to him. Some words were exchanged and a confrontation between the appellant and Williams arose. Once outside the house, Williams said he saw the appellant coming from the direction of a gas station, *Page 232 
carrying two soft drink bottles. Williams' testimony in part is as follows:
 "A. Well, he started towards me. All right, he crossed the street, and I was going to run up on him with the two bricks I had. And he told me if I come up on him he was going to throw some gas on me."
Williams said the appellant was carrying two bottles, one of which had something in it, but the other was broken. He said the appellant flagged a car down and got in it. Further from the record:
 "A. Well, I told the owner of the car to let him out, if not, I was going to break his window.
"Q. All right, what happened?
 "A. Well, he didn't want to get out, and the guy didn't want to put him out. So, I just broke the window, and left."
On cross-examination, Williams said he could see inside the car very clearly the entire time he was talking to the occupants and until it drove away. He did not see the appellant pour any gasoline on Barry Robinson, nor did he see him strike any matches inside the car. Williams did not know what was in the bottle which appellant had in his hand.
At the end of the State's evidence, counsel for appellant moved to exclude the State's evidence. After lengthy argument, the trial court overruled the motion, and the defense presented its case.
Robert Wayne Loller testified that the appellant and J.D. Williams were at his house on the night in question, that they got into an argument over a hat, and he asked them both to leave. He said Williams left first, and the appellant left about five minutes later. He said the appellant took two drink bottles with him when he left the house, and that they were both empty. He also stated there were two service stations in the neighborhood, but neither of them were open at that time of night, and that he did not have any gasoline around his house.
The appellant testified in his own behalf. He stated that when he left Loller's house, he carried two drink bottles with him. He said the bottles were empty, and he never had gasoline in them on that night. When he entered Robinson's car, he only had one bottle with him. He denied throwing any gasoline on Robinson or threatening him. Appellant stated that Robinson got excited when Williams threw the bricks at his car and drove off in a hurry at that time. On cross-examination, he explained that he had the bottles for his defense because he thought that J.D. Williams and Williams' nephew would be waiting on him outside.
Willie Frank Kimbell was called as a rebuttal witness by the State. He stated that on the night in question, the appellant and J.D. Williams got into a fight over a $5.00 bill, which occurred in the bedroom of Robert Loller's home. After the fight, he said the appellant left taking a drink bottle with him. The witness stated that the drink bottle had been sitting in the hallway of the house and that he could smell gasoline in the bottle. On cross-examination, he was asked if the State had not promised to help him on a pending case against him if he would testify against the appellant. The witness stated that his case was mentioned to him, and he was told that his assistance in the instant case would be taken into consideration, but that no direct promise had been made to him by the prosecution.
J.D. Williams was recalled by the defense and stated that Kimbell was not present at Loller's home on the night in question. Loller was then recalled by the defense, and testified that Kimbell positively was not at his house on the night in question.
Appellant submitted a number of written requested charges which were refused by the trial judge, among which was an *Page 233 
affirmative charge and an affirmative charge with hypothesis.
The original indictment against the appellant contained a count charging kidnapping and a second count charging assault with intent to maim. A demurrer was sustained as to the charge of assault with intent to maim, but was overruled as to the kidnapping charge. The sole question before this Court therefore relates to the charge of kidnapping. The appellant contends that the facts of this case did not bring it within the meaning of Title 14, § 6, Code of Alabama 1940, which reads as follows:
 "Any person who forcibly or unlawfully confines, inveigles, or entices away another, with intent to cause him to be secretly confined, or imprisoned against his will, or to be sent out of the state against his will, shall, on conviction, be imprisoned in the penitentiary for not less than two nor more than ten years."
The sufficiency of the evidence is properly before us via appellant's motion to exclude the State's evidence and his requests for the affirmative charge and the affirmative charge with hypothesis.
The two leading cases in Alabama concerning the kidnapping statute in question are Clayton v. State, 23 Ala. App. 150,123 So. 250 (1929), cert. denied 220 Ala. 39, 123 So. 236, and Dossv. State, 23 Ala. App. 168, 123 So. 237 (1929), cert. denied220 Ala. 30, 123 So. 231. Those are companion cases arising out of the same fact situation and both give a detailed construction of § 3189, Code of Alabama 1923, which is the identical section recodified in the 1940 Code as Title 14, § 6.
 I
The indictment in the instant case follows the Code form and is therefore sufficient per Title 15, § 259, Code of Alabama 1940. This is so even though the form omits to aver some of the material facts which the State must prove in order to secure a conviction. Doss, opinion denying certiorari, 220 Ala. 30,123 So. 231, supra; Lashley v. State, 236 Ala. 28, 180 So. 724
(1938). That is, the Code form indictment leaves out the averment (shown in italics below) that the confinement be, "with intent to cause him to be secretly confined, or
imprisoned . . .," as specified in Title 14, § 6, supra.
Count One of the indictment in pertinent part states:
 ". . . Lawrence Ball . . . unlawfully or forcibly inveigled, enticed, or confined Barry Robinson, with intent to cause said Barry Robinson, to be imprisoned against his will, . . ."
Pursuant to Doss, supra, proof limited to the allegation of a mere imprisonment as alleged in the indictment in insufficient to make out a case of kidnapping pursuant to Title 14, § 6. The Supreme Court and the Court of Appeals in the Doss opinions go into great detail setting forth the reasoning for this.
We will not restate here the lengthy reasoning set out inDoss and Clayton as such is well expressed in those opinions and is self-explanatory. It is simply sufficient to reiterate that, regardless of the wording of the form indictment, the confinement or imprisonment must be proved at trial to have been done with the intent to cause the victim to be secretly
confined or imprisoned, else it is only a false imprisonment.
The facts in this case do not establish the offense of kidnapping. The appellant was fleeing from an assailant. His order to the driver to, "get me out of here," even though coupled with a threat, does not evidence an intent to secretly confine or imprison the driver of the vehicle. The appellant in fact asked the driver to let him out and not take him to the police station. He never instructed the driver to go anywhere other than to leave their *Page 234 
present location. That demand was clearly for the purpose of getting the appellant out of harm's way, else he was likely to have his head bashed in by a brick. These facts are not such that a jury could infer that appellant's intent was to secretly confine the driver. This is especially so where the jury was never instructed that such intent is a key element in reaching a finding of guilt.
The motion to exclude the State's evidence should have been granted.
 II
The trial court's charge to the jury concerning the charge of kidnapping was as follows:
 ". . . Under count one it is charged that this Defendant unlawfully or forcibly inveigled, enticed or confined Barry Robinson with the intent to cause said Barry Robinson to be imprisoned against his will. Now then, there is not anything there that needs any particular definition for you. That is what the statute says, that if someone unlawfully or forcibly inveigled, enticed or confined a person with the intent to cause him to be imprisoned against his will, that constitutes the offense as charged in this case. So, that is what you have got to decide from the evidence. Was Barry Robinson inveigled, or enticed or confined? If he was not, then, this man is not guilty of this offense. Was there an intent on the part of this Defendant to imprison Barry Robinson against his will? If there was not, then, this Defendant is not guilty of this offense that is charged in count one of this indictment." (Emphasis supplied)
The trial court made no mention to the jury of the necessary elements of the kidnapping statute; that the confinement or imprisonment had to be with the intent to secretly confine or imprison the victim. The appellant requested the following written charge concerning that element, which was refused:
 "I charge you that before you can find the defendant guilty of kidnapping you must find that the defendant had the intent to secretly confine or secretly imprison Barry Robinson."
According to the trial court's oral charge, the jury was erroneously instructed that the statute merely forbids imprisonment against the will of the victim and that the only intent necessary on the part of the appellant was to imprison the victim against his will.
Such instruction was a misconstruction of the kidnapping statute by the trial judge. Such would not be subject to review, where the appellant announced, "satisfied" at the end of the oral charge, without bringing the omitted matter to the trial court's attention by way of a written requested charge.
The above requested charge, not being covered in any way by the trial court's oral charge, should have been given. Failure to do so left the jury with a complete misunderstanding as to which elements constitute the offense of kidnapping. Such constitutes reversible error.
REVERSED AND REMANDED.
TYSON, HARRIS and DeCARLO, JJ., concur.
CATES, P.J., not sitting. *Page 235